33541. BITUMINOUS CASUALTY CORP. *et. al.* v. POWELL.

DECIDED JUNE 9, 1951. REHEARING DENIED JUNE 29, 1951.

*John M. Williams, T. Elton Drake,* for plaintiff in error.
*Jake B. Joel,* contra.

SUTTON, C. J. Mrs. Grady Powell filed with the State Board of Workmen's Compensation a claim for compensation, for herself and two minor children, against the Fickett Cotton Mills Inc., and its insurer, the Bituminous Casualty Corporation, on account of the death of her husband, an employee of the cotton mill. She was awarded compensation by the hearing director, and, on appeal, the award was affirmed by the judge of the superior court. The employer and its insurer excepted, and brought the case to this court.

■ The plaintiffs in error concede in their brief that the facts in this case show that there was some of the employee's work in which there was sufficient strain or exertion to cause the death of a man in a weakened physical condition, and that the evidence in the record is sufficient to establish a presumption that the employee's death arose out of and in the course of his employment. But it is argued that, as the employee did not become ill until after he had consumed a pint of iced tea, the proximate cause of the employee's death was his drinking the tea, which was

brought to him by his wife, and hence that his death was not the result of an accident arising out of and in the course of his employment.

There was evidence introduced at the hearing to the effect that Powell was employed by the Fickett Cotton Mills Inc. on June 5, 1950, and worked from 3 p.m. until about 9 p.m. on that date, when he became ill and was taken to a hospital, where he died the following day, June 6, 1950. He was 62 years of age. Witnesses who were working at the cotton mill the night of June 5 testified to the effect that it was unusually hot on that night and Powell and the other workers stayed wet with sweat in the mill; that Powell had been breathing heavily and complaining of asthma and a choking in his throat, but he didn't want to get off and stayed on the job; and that Powell had gone out of the mill two or three times during the night, saying that he didn't believe he would be able to stay on that night as he felt bad.

According to the testimony of the night overseer, Powell was operating two machines known as twisters, which required considerable exertion on his part, and when it appeared that he was getting too hot and worried in doing this work, the overseer told Powell to stop one of the twisters and to go outside, sit down, and cool off. Powell drank about a pint of tea after the overseer talked to him, and became ill twenty or thirty minutes after the overseer told him to go out. He was then pale, perspiring freely, and complaining that his head hurt. The overseer and others carried him to the office of the mill.

Dr. G. Erwin testified in substance that he attended Powell in the hospital, examined him, and diagnosed his condition as caused by a cerebral hemorrhage, as there was no evidence of infection, and a normal electrocardiogram indicated there were no heart complications, and the course of Powell's hospital stay during the last 36 hours of his life showed the characteristics of cerebral hemorrhage; that a cerebral hemorrhage is a rupture of a blood vessel in the brain, caused by high blood pressure combined with hardening of the arteries, or by a congenital weakness of the blood vessels in the brain; that physical exertion or strain would make the blood pressure high and could rupture a blood vessel in the brain; that if a man of Powell's age were

to get very hot so that he perspired freely and then drank a quantity of cold liquid, this alone would not cause or have any effect on a cerebral hemorrhage, although it might upset his stomach, cause low blood pressure, or shock; and that in his opinion, Powell's death could not have been in any way the result of consuming a large quantity of cold liquid while he was very hot.

We are of the opinion that the director was authorized to find from the evidence that the death of the deceased was the result of an accident arising out of and in the course of his employment, that is, that the exertion in doing his work at the time in question accelerated, contributed to, and was the proximate cause of his death. The director was authorized to find from the evidence that the deceased employee suffered a cerebral hemorrhage resulting in his death; that this condition was brought about or contributed to by exertion in doing his work at the time and place when he became ill and had the attack; and that his death was not the result of or caused by his drinking iced tea as contended by the plaintiffs in error. See and compare the following cases: *Griggs* v. *Lumbermen's Mutual Casualty Co.*, 61 *Ga. App.* 448 (6 S. E. 2d, 180); s.c., affirmed, 190 *Ga.* 277 (9 S. E. 2d, 84); *Williams* v. *Maryland Casualty Co.*, 67 *Ga. App.* 649 (21 S. E. 2d, 478); *Fidelity & Casualty Co.* v. *Adams*, 70 *Ga. App.* 297 (28 S. E. 2d, 79); *Standard Accident Ins. Co.* v. *Handspike*, 76 *Ga. App.* 67 (44 S. E. 2d, 704); *Travelers Ins. Co.* v. *Young*, 77 *Ga. App.* 512 (48 S. E. 2d, 748); *Lumbermen's Mutual Casualty Co.* v. *Bridges*, 81 *Ga. App.* 395 (58 S. E. 2d, 849); *Bussey* v. *Globe Indemnity Co.*, 81 *Ga. App.* 401 (59 S. E. 2d, 34); *Pacific Employers Ins. Co.* v. *Donaldson*, 81 *Ga. App.* 629 (59 S. E. 2d, 529); *Chevrolet-Atlanta Division* v. *Nash*, 81 *Ga. App.* 671 (59 S. E. 2d, 681); *Liberty Mutual Ins. Co.* v. *Meeks*, 81 *Ga. App.* 800 (60 S. E. 2d, 258); *Maryland Casualty Co.* v. *Dixon*, 83 *Ga. App.* 172 (63 S. E. 2d, 272).

■ It is further contended by the plaintiffs in error that the hearing director abused his discretion in refusing their request for a continuance of the hearing to introduce expert testimony. The request was, "I would like to continue this over to introduce expert testimony, medical testimony," and the director replied, "I will take your request under consideration and after the

record is written up, if I think it is necessary, I might do that; otherwise, I will write the award."

This was a matter within the discretion of the hearing director. *Hartford &c. Co.* v. *Garland,* 81 *Ga. App.* 667 (59 S. E. 2d, 560). It appears from the record that the hearing director stated that the qualifications of the attending physician were admitted, and no objection to this statement was made by the plaintiffs in error. The testimony of the attending physician was not vague, indefinite and uncertain, and it does not appear that the director abused his discretion in refusing to continue the case to take more testimony.

■   Accordingly, the judge of the superior court did not err in affirming the award of the State Board of Workmen's Compensation granting compensation.

*Judgment affirmed.   Felton and Worrill, JJ., concur.*