34624. FEDERATED MUTUAL HARDWARE INSURANCE COMPANY *et al. v.* ELLIOTT.

Decided May 14, 1953—Rehearing denied May 27, 1953.

*Marvin G. Russell, Turner Paschal,* for plaintiffs in error.

*Joe Salem,* contra.

TOWNSEND, J. ■ Code § 114-303 provides in substance that every injured employee shall within thirty days give to his employer notice of the accident or no compensation shall be payable, "unless it can be shown . . . that the employee had been prevented from doing so by reason of physical or mental incapacity, or by fraud or deceit, or that the employer, his agent, representative, or foreman, or the immediate superior of the injured employee, had knowledge of the accident, or unless a reasonable excuse is made to the satisfaction of the Department of Industrial Relations for not giving such notice, and it is reasonably proved to the satisfaction of the Department that the employer had not been prejudiced thereby." The purpose of this provision is undoubtedly to prevent the belated filing of claims which might work a fraud or injustice upon the employer. The employer here received no formal notice until February 6, 1952, which was more than 30 days after Elliott's death on December 15, 1951, but the employer did have notice that Elliott was "sick" on the job, and was too ill the following day to return to work. Whether this in itself is sufficient to constitute notice of an "accident" under the compensation law, it is unnecessary to decide, but it is a circumstance which might have been considered by the board in finding, as a matter of fact, that failure to give the proper notice was excusable and that the claim should not thereby be barred. As stated in *James* v. *Fite,* 38 *Ga. App.* 759 (2) (145 S. E. 536): "Whether or not the

failure to give such notice comes within one of the exceptions set forth by the statute, so as to prevent such failure from operating as a bar to an award of compensation, is a question of fact, to be determined by the Industrial Commission, and its finding upon such question of fact, if supported by the evidence, is, in the absence of fraud, conclusive." See also *Railway Express Agency* v. *Harper*, 70 *Ga. App.* 795 (29 S. E. 2d 434). Whether or not the delay in giving notice is excusable is peculiarly a matter for the determination of the board, it being best situated to determine both the extenuating causes and the prejudicial results of a failure to comply strictly with the provisions of Code § 114-303, supra. The hearing director found that the acute illness of the deceased was such an extenuating circumstance, and under all the circumstances of this case we believe that such finding was in the interests of justice and within the discretion of the board.

■ The defendant further contends that the award was without evidence to support it, in that a finding was demanded that Elliott was not an employee but was an independent contractor, citing *Bentley* v. *Jones*, 48 *Ga. App.* 587 (173 S. E. 737), to the effect that the right to supervise the work to see that desired results are obtained is compatible with the relationship of independent contractors; and *Richards* v. *Marco Realty Co.*, 57 *Ga. App.* 242 (194 S. E. 880), on the proposition that the specialization required in the trade is an aspect to be considered in determining whether the relationship is that of servant or contractor. Specialization alone is hardly an infallible test—is a plasterer more of a specialist than a carpenter or brickmason, and would any inference arise from such an occupation that the party was not the employee of another? Code § 66-101 provides that, where wages are payable at a stipulated period this raises the presumption that the hiring is for such period. Here the wages were payable on an hourly base. Code § 105-502 (5) provides that the relation of master and servant may be created by the employer's retaining the right to direct or control the time and manner of executing the work; here, the supervisor testified that he had the right to tell the men what to do at any time, to supervise the work and the manner in which they did it, and that all materials were furnished by the employer. In *Fidelity*

& *Casualty Co. of New York* v. *Clements,* 53 *Ga. App.* 622 (1) (186 S. E. 764) it is held: "The crucial test to be applied . . . in determining whether the relationship of the parties under a contract for performance of labor is that of master and servant, or that of employer and independent contractor, lies in whether the contract gives, or the employer assumes, the right to control the time, manner and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." The director properly found that the relationship here was that of master and servant.

■ The question is next raised as to whether there was any evidence to support the finding that the deceased suffered death resulting proximately from a heart attack to which the exertion of his employment contributed as a proximate precipitating factor. That there was such evidence cannot be disputed, since the only physician testifying gave as his positive opinion that such was the case. In this the case differs from *Liberty Mutual Ins. Co.* v. *Harden,* 85 *Ga. App.* 830 (70 S. E. 2d 89), in which the testimony of medical witnesses most favorable to the claimant was merely "problematical and conjectural." This witness further offered an explanation of the cause of death as shown by the death certificate, which appears reasonable and not in conflict with the cause of death as shown by that document; nevertheless, this court is not required to decide whether such testimony preponderated to overcome the prima facie case made out by the death certificate, but only to decide whether any evidence supports the director's finding that it did so preponderate. Where the immediate precipitating cause of injury is overexertion within the regular course of employment, which exertion is too great for the man undertaking the activity in his then present physical condition, the injury is an accident and is compensable, and the fact that total incapacity did not result until after the day's work was over will not alter the situation. *Williams* v. *Maryland Casualty Co.,* 67 *Ga. App.* 649 (21 S. E. 2d 478); *Maryland Casualty Co.* v. *Dixon,* 83 *Ga. App.* 172 (63 S. E. 2d 272); *Bituminous Casualty Corp.* v. *Powell,* 84 *Ga. App.* 235 (65 S. E. 2d 825); *Massachusetts Bonding &c. Co.* v. *Turk,* 84 *Ga. App.* 547 (66 S. E. 2d 364). The evidence was sufficient to support a finding in favor of the claimant on this issue.

■ Exception is also made to the director's finding that the average weekly wages of the deceased employee were in excess of $48 per week and in computing compensation accordingly. It appeared from the evidence that the deceased worked as he obtained employment; that he averaged less than one day per month working for the defendant, but did many other jobs; that he worked nine hours on the day he was stricken; and that employees of the defendant regularly worked eight hours per day, five and one-half days per week. Code (Ann. Supp.) § 114-402 (3), the only method of computation here, provides that the full-time weekly wage of the injured employee shall be used in computing the amount of the award. In *New Amsterdam Casualty Co. v. Brown*, 81 *Ga. App.* 790 (2 b) (60 S. E. 2d 245), it was held as follows: "Where subsections (1) and (2) are inapplicable in arriving at the average weekly wage under the provisions of Code (Ann. Supp.) § 114-402, the director has no alternative but to apply the provisions of subsection (3) thereof so as to use the full-time weekly wage of the injured employee as his average weekly wage. Where wages are paid on an hourly basis, the full-time weekly wage is the wage per hour multiplied by the number of hours shown by the evidence to constitute a full-time work week for such employee under his contract of employment." The director was authorized, under this rule, to find that the employee's average weekly wage, at $2.50 per hour, was in excess of $48 per week. As a matter of fact, such employee would have earned this amount had he only worked two and a half days per week, at this hourly rate. There was no error in the computation of the award.

The judge of the superior court did not err in affirming the award of the Board of Workmen's Compensation.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*