In the Supreme Court of Georgia

Decided: May 23, 2016

S15G1205.  FULTON COUNTY BOARD OF
EDUCATION, et al. v. THOMAS.

HUNSTEIN, Justice.

In this workers' compensation case, we granted certiorari to consider how properly to calculate the "average weekly wage," as defined in OCGA § 34-9-260, of a claimant who earned income from a temporary job with a second employer during the statutory 13-week period immediately preceding the date she was injured on the job with her primary employer.  See id. at (1).  The Court of Appeals held that the wages earned from the second employer during the 13-week period should, under the "concurrent similar employment" doctrine, be included in calculating the claimant's average weekly wage.  Thomas v. Fulton County Bd. of Educ., 331 Ga. App. 828 (771 SE2d 482) (2015).  Under the circumstances presented here, we agree with the Court of Appeals' conclusion, and we therefore affirm.

Appellee Merita Thomas has been employed as a school bus driver with

the Fulton County Board of Education (hereinafter, "County") since 2008. Thomas' employment with the County required her to drive County school buses during the nine-month school year but not during the school district's summer vacation; Thomas' salary, however, was paid out over a twelve-month period. During the district's summer vacation in 2011, Thomas supplemented her income by working for Quality Drive Away ("QDA"), driving newly manufactured school buses from the Atlanta area to other parts of the country. Thomas' summer employment with QDA ended on July 30, 2011, and she returned to her duties with the County when school resumed shortly thereafter.

On October 19, 2011, Thomas was injured while on the job with the County. She thereafter filed a claim for workers' compensation benefits. The County has never disputed the compensability of Thomas' injury, and the only contested issue is the correct calculation of Thomas' "average weekly wage," the basis upon which her benefits are to be computed. See OCGA § 34-9-260.

OCGA § 34-9-260 provides in pertinent part that

(1) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury, his average weekly wage shall be one-thirteenth of the total amount of wages earned in such

2

employment during the 13 weeks;

(2) If the injured employee shall not have worked in such employment during substantially the whole of 13 weeks immediately preceding the injury, the wages of a similar employee in the same employment who has worked substantially the whole of such 13 weeks shall be used in making the determination under the preceding paragraph; [and]

(3) If either of the foregoing methods cannot reasonably and fairly be applied, the full-time weekly wage of the injured employee shall be used.

Id. The dispute in this case centers on whether subsection (1) of this Code section is applicable and whether Thomas' wages from QDA are properly included in the calculation of her average weekly wage.[1] Integral to these questions is whether Thomas' employment with QDA falls within the so-called "concurrent similar employment" doctrine as adopted by our Court of Appeals in St. Paul-Mercury Indemnity Co. v. Idov, 88 Ga. App. 697 (77 SE2d 327) (1953), cert. dismissed, 210 Ga. 256 (78 SE2d 799) (1953), under which a claimant working multiple similar jobs at the time she sustains a compensable

[1] The parties agree that subsection (2) is not applicable here, such that, if subsection (1) does not apply, subsection (3) would. As used in subsection (3), the "full-time weekly wage" refers to the employee's weekly wage as set forth in the contract of employment. Federated Mut. Implement & Hardware Ins. Co. v. Elliott, 88 Ga. App. 266 (4) (76 SE2d 568) (1953).

3

injury is entitled to have her wages earned from all such jobs included in calculating her average weekly wage.

At the administrative stage, the State Board of Workers' Compensation initially concluded that Thomas' employment with QDA constituted "concurrent similar employment," because it involved the same "type and size" of school bus and "same skill set" as required in her employment with the Board, and because she was employed with QDA for some period within the 13 weeks prior to sustaining the compensable injury. Accordingly, the administrative law judge found that subsection (1) of OCGA § 34-9-260 should be applied and included in the average weekly wage calculation those wages Thomas had earned from QDA during the 13-week period immediately preceding the date of her injury.[2] On appeal, the Board's Appellate Division reversed the ALJ, finding that, while Thomas' employment with QDA was "similar" to her employment with the County, it was not "concurrent." The Board reasoned that, because Thomas' employment with QDA ended prior to the date she sustained her injury, she

[2] As the Court of Appeals noted, the ALJ, though purporting to apply subsection (1), actually utilized the method prescribed in subsection (3) in calculating the wages Thomas had earned from the County during the 13-week period. See Thomas, 331 Ga. App. at 832.

4

"was not employed concurrently with another employer at the time of her work injury." Accordingly, the Board held that the QDA earnings should not be included in the average weekly wage calculation.

Thomas appealed to superior court, which affirmed the Board's decision. Thereafter, on discretionary appeal, the Court of Appeals reversed. While agreeing with the conclusion that subsection (1) was applicable, the appellate court disagreed with the determination that Thomas' employment with QDA was not concurrent. It held:

> [Thomas] was working as a bus driver for substantially the whole of the 13 weeks immediately preceding her injury on October 19, 2011, because she worked as a bus driver for both QDA and Fulton County during the whole time. OCGA § 34-9-260 (1) explicitly contemplates work "*for the same or another employer*" and thus, because Thomas worked those 13 weeks for the same or another employer in the type of employment during which she was injured, her average weekly wage should have been computed based on her "total amount of wages earned" for her work during the 13 weeks immediately preceding her injury.

Thomas, 331 Ga. App. at 831-832. We granted certiorari to review the Court of Appeals' holding. Because the issue presented is a question of law and the facts relevant to its resolution are undisputed, our review is de novo. See Luangkot v. State, 292 Ga. 423, 424 (736 SE2d 397) (2013).

5

1. When we consider the meaning of a statute, "we must presume that the General Assembly meant what it said and said what it meant." To that end, we must afford the statutory text its "plain and ordinary meaning," we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citations omitted.) Deal v. Coleman, 294 Ga. 170, 172-173 (1) (751 SE2d 337) (2013). The text of OCGA § 34-9-260 provides that the method of calculation prescribed in subsection (1) is to be applied "[i]f the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of 13 weeks immediately preceding the injury."

In this context, it has been held that the term "employment" refers to "the particular calling or kind of employment in which [the] claimant was engaged at the time of [her] injury." Black v. American & Foreign Ins. Co., 123 Ga. App. 133, 134-135 (2) (179 SE2d 679) (1970). The use of the term "employment" rather than "employer" as the point of reference for the 13-week period is significant, illuminating the focus on the nature of the work performed rather than the identity of the employer. This principle is reinforced by the phrase "whether for the same or another employer," which also indicates the

6

significance of the actual work rather than the workplace.

Here, there is no dispute that Thomas' "employment" at the time she was injured was that of a school bus driver; in fact, the County concedes that her work with QDA was similar in nature to that which she performed for the County. In addition, it is undeniable that Thomas was working in this line of employment for "substantially the whole" of the 13-week period prior to the date of her injury – July 20 through October 19, 2011. The undisputed evidence reflected that Thomas worked for QDA through July 30, 2011 – the first ten days of the 13-week period – and that she resumed driving for the County when the school year began in August 2011 and worked steadily from that time until she was injured. The facts presented here thus clearly fall within the scope of subsection (1).

2. We must next determine whether Thomas' QDA wages should be included in the calculation of her average weekly wage under the "concurrent similar employment" doctrine. Our Court of Appeals adopted this doctrine in 1953 in adjudicating a workers' compensation dispute wherein the claimant was employed as a retail salesman for three different employers at the same time and was injured on the job at one of the three workplaces. Idov, 88 Ga. App. at

698-699. In deciding whether the claimant's wages from all three employers were to be used in computing his average weekly wage, the Court of Appeals noted:

> The one high aim constituting the foundation of [the workers' compensation] law is compensation for an injured employee in proportion to his loss on account of the injury. That loss is deprivation of future earnings, and is measured by his proved earning capacity. . . . We think the fairest yardstick by which his compensation is to cover his injury can be measured is what he was able to [earn] and was actually earning when the misfortune came upon him.

(Citation omitted.) Id. at 700. The Court of Appeals thus concluded that the claimant's earning capacity should be determined by reference to the wages earned in "his concurrent work" so long as it was "similar in character to the work in the course of which the accident was sustained." Id. at 700-701.[3]

Subsequent appellate cases have examined the degree of similarity required among the claimant's various jobs to invoke the concurrent similar employment doctrine. See, e.g., Employer's Ins. of Wausau v. Brown, 147 Ga.

_____

[3]The language of the analogous provision in the 1933 Georgia Code, which was applicable at the time Idov was decided, was virtually identical to the language of current OCGA § 34-9-260 (1). See Ga. L. 1945, p. 486-487, § 1 (enacting § 114-402 of the 1933 Code, subsection (1) of which was the predecessor to OCGA § 34-9-260 (1)).

App. 866 (1) (250 SE2d 575) (1978) (applying concurrent similar employment doctrine where worker was employed processing logs at a pulpwood plant and cutting trees for one of the plant's independent contractors); St. Paul Fire & Marine Ins. Co. v. Walters, 141 Ga. App. 579 (3) (234 SE2d 157) (1977) (applying concurrent similar employment doctrine where claimant worked as a retail sales clerk and as a clerk in a hospital). Cf. Owens-Illinois, Inc. v. Lewis, 150 Ga. App. 640 (1) (A) (258 SE2d 293) (1979) (employment as machinist not sufficiently similar to supervisory role in water purification business to qualify as concurrent similar employment); Black, 123 Ga. App. at 133-134 (employment as a courier not sufficiently similar to employment as printing press supervisor to qualify as concurrent similar employment). There is no Georgia case law, however, examining the meaning of "concurrent" in this context, as it appears that the reported cases have, until now, uniformly involved circumstances in which the claimant was simultaneously employed with multiple employers at the time the injury occurred. See Brown, 147 Ga. App. at 867-868 (McMurray, J., concurring in part and dissenting in part); Walters, 141 Ga. App. at 579-580; Idov, 88 Ga. App. at 697; see also O'Kelley v. Hall County Bd. of Educ., 243 Ga. App. 522, 523 (532 SE2d 427) (2000) (parties

9

stipulated that employment was concurrent (and similar) where she simultaneously held a full-time food service job at the time she was injured while working a different part-time food service job).[4]

Notable to us on this issue is the fact that OCGA § 34-9-260 (1) itself does not contain the word "concurrent." Rather, the statutory language refers to the claimant's employment <u>during the 13-week period</u> preceding the injury. Though the concurrent similar employment doctrine was spawned in addressing situations involving simultaneous employment at the time of the injury, and though it is still most commonly applied in that context, there is no basis in the text of the statute for requiring such simultaneity as an absolute condition to the doctrine's application. Instead, we believe that, applied in conjunction with subsection (1), the doctrine requires a "concurrence" of similar jobs within the 13-week period. This construction of the doctrine gives effect to the legislative determination, reflected in subsection (1), that the 13-week period provides a

_____

[4]Though the Court of Appeals' opinion in <u>O'Kelley</u> articulates the concurrent similar employment doctrine as requiring that the "employee [was] concurrently employed by different employers at the time of the injury," id. at 523, this statement is mere dicta, given that the meaning of "concurrent" was not at issue in the case. Given our holding herein, we disapprove this statement from <u>O'Kelley</u>.

10

reliable snapshot of a claimant's earning capacity at the time of the injury. See Idov, 88 Ga. App. at 700 (design of workers' compensation law is to compensate an injured employee "in direct relation to his earning capacity at the time of the accident").

Accordingly, we hold that, where a claimant sustains an employment-related injury, after having worked in that line of employment for substantially the whole of the 13-week period immediately preceding the injury, the "total amount of wages earned" under subsection (1) must include wages earned by the claimant for work performed for another employer in the same line of employment during the 13 weeks, regardless of the claimant's employment status with that other employer at the time of the injury. In other words, in applying the concurrent similar employment doctrine, we view "concurrent" as indicating that the various jobs were all held within the 13-week period, even if they were not held at the same time nor all held at the time of the injury. We therefore conclude that the Court of Appeals correctly determined that Thomas' work with QDA qualified as concurrent similar employment, such that the calculation of her average weekly wage should include those wages earned from QDA during the 13-week period immediately preceding her injury.

11

3. By its own terms, subsection (3) of OCGA § 34-9-260 applies only if subsections (1) and (2) cannot be "reasonably and fairly applied." Because the inclusion of Thomas' wages from QDA and the County during the 13-week period ensures that the average weekly wage does reasonably and fairly approximate Thomas' earning capacity in her line of employment at the time she was injured, subsection (1) of OCGA § 34-9-260 is properly applied, and there is no need to resort to subsection (3).

For the foregoing reasons, we affirm the judgment of the Court of Appeals.

Judgment affirmed. All the Justices concur.