42827, 42840.  MACZKO et al. v. EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY et al.; and vice versa.

ARGUED JUNE 7, 1967—DECIDED SEPTEMBER 5, 1967.

*J. Richmond Garland, Frank D. Foster, M. T. Hartman, III,* for appellants.

*Swift, Currie, McGhee & Hiers, James B. Hiers, Jr.,* for appellees.

JORDAN, Presiding Judge. The order of the court set forth above only "questions whether there is competent evidence showing a causal connection between" the employee's death and his employment, and although apparently recognizing his "duty to sustain the appeal," the court failed to reach such a determination, upon which a further determination to remand the case to the board would have been authorized. For this reason the order is erroneous, as *Code* § 114-710 makes no provision for such a judgment. Under this section the court must affirm the award

unless it is set aside on one or more of the statutory grounds stated therein. The order of the court remanding the case to the board, in the absence of setting aside the award on one of the statutory grounds, was therefore unauthorized. See *Hartford Acc. &c. Co. v. Cox,* 191 Ga. 143 (11 SE2d 661); *Hartford Acc. &c. Co. v. Cox,* 63 Ga. App. 763 (12 SE2d 110).

The trial court having divested itself of jurisdiction in the matter by this action, however, this court has jurisdiction on appeal from such order, and in the posture presented on appeal will examine the record to determine whether there is any competent evidence to support the award. See *Butler v. Fidelity &c. Co.,* 88 Ga. App. 620 (76 SE2d 813).

The deceased employee was engaged in experimental work for his employer, and some three months before his death began to experience shortness of breath and a loss of weight. He finally sought medical attention about three weeks before his demise on April 16, 1965. Although the death certificate shows pneumonia as the cause of death, an autopsy revealed his death to be the result of a diffuse interstitial pulmonary fibrosis known as Hamman-Rich syndrome. The real controversy in this case is whether the inhalation of fumes while at work caused the syndrome.

A pathologist who supervised the autopsy was furnished, subsequent to the autopsy, with a list of four chemicals which possibly were used in experimentation by the deceased, xylene, butanone, ethylene glycol, and boron trifluoride. He received this information in the course of a telephone conversation with a person who identified himself as a representative of the insurer. The pathologist selected the boron compound as suspect because of the known toxicity of boron, and stated that he was making an analysis of tissue from the deceased to determine the presence of boron. He did not state, however, that he had found the presence of boron in the tissue. He did not know of any precedent for poisoning from the inhalation of boron, but did know of cases of poisoning from boron in the form of boric acid used on babies for diaper rash. He stated that it was beyond the limits of his knowledge as to the effect of the combination of any two of the named chemicals, and in response to the sug-

gestion that this would be in the field of a chemist, he said "it would be more in the line of a fortune teller." Considered as a whole his testimony fails to show that the inhalation of the fumes of any of the chemicals, or a combination thereof, produced the fibrosis. He did state that if changes occurred in the lungs which he could not totally explain on any rational basis, he would have to admit the possibility of the changes being due to some inhaled substance.

The medical doctor who examined the employee on March 31, 1965, and again on April 12, 1965, at which time he sent the patient to a hospital, eliminated xylene, butanone, and ethylene glycol as being dangerously toxic by inhalation of fumes, but stated that the fumes of boron trifluoride are toxic, and a definite respiratory irritant. He testified that the lethal dose from boron trifluoride is 1 cc., but he could not state how the measurement is determined, as it would require a chemist to explain that. In response to a suggestion of exposure for a period of four months and further questioning in this respect, he stated that the exposure "would have done some damage to his lungs," and that he "certainly would think the inhalation of the fumes from boron trifluoride had something to do with his lung condition, if he had no previous trouble."

While he testified that exposure would cause some lung damage, he did not state the degree or extent of the damage or that it was sufficient to aggravate or produce the condition causing death. Despite the use of "would" instead of "could" in expressing an opinion as to the effect of exposure to boron trifluoride fumes, based on assumed facts, the language used, especially as qualified by his other testimony as set forth below, is suggestive only of the *possibility* of a causal relationship between the syndrome producing death, and is deficient in showing with any certainty the *probability* of exposure as a cause. The testimony must show at least a probable cause, as distinguished from a mere possible cause. See *Woodruff v. American Mut. Liab. Ins. Co.*, 67 Ga. App. 554, 557 (21 SE2d 298); *McDaniel v. Employers Mut. Liab. Ins. Co.*, 104 Ga. App. 340, 342 (121 SE2d 801).

In response to questioning as to what a person would normally

see and expect from a man who had inhaled boron trifluoride fumes, he stated that he had never had a case of this sort "before" and merely reiterated that boron trifluoride is a strong lung irritant. He also testified that medical science has not progressed far enough to determine the cause of the Hamman-Rich syndrome, but that anything which causes irritation or infection in the lungs could cause the condition, and it could occur at any age. He recalled that in one of his patients the cause was a bacterial invasion of the lungs.

While the foregoing evidence does warrant an inference that exposure to boron trifluoride or other chemical fumes could have produced the syndrome, and while there are assumptions in the course of questioning the medical experts to the effect that the deceased could have been exposed to boron trifluoride fumes or other fumes while at work, and while there is lay testimony indicating probable exposure to fumes of some sort, and documentary evidence indicating the use of certain chemicals, not including the four named chemicals, there is no evidence whereby the hearing director and the full board could determine, even by inference, exposure to boron trifluoride or other chemical fumes in such a manner and to such an extent as to produce the syndrome and thus support the ultimate fact determination that death resulted from an accidental injury caused by the inhalation of dangerous fumes at work. In this respect we agree with the statement of the dissenting member of the full board that "[t]here is no good evidence of what chemicals the decedent was exposed to on the job; but assuming that he was exposed to boron trifluoride, there is no evidence as to how much exposure and the nature of the exposure he had," and statements to the same effect in the order of the superior court. In view of these deficiencies in the evidence the award of the hearing director as affirmed by the full board granting compensation is not supported by the evidence and is therefore contrary to law. Accordingly, the superior court erred in failing to set aside the award which would have authorized further disposition of the case under the provisions of *Code* § 114-710.

*Judgment reversed with direction for further action not inconsistent with this opinion. Deen and Quillian, JJ., concur.*