## 60764. JOHNSON et al. v. FOWLER ELECTRIC COMPANY, INC. et al.

BIRDSONG, Judge.

The appellants in this case were residents of an apartment building which burned the night before Thanksgiving in 1974. They sued IDS Corporation, which was the owner of the apartment complex on the date of the fire, and Fowler Electric Co., the electrical contractor which installed the electrical wiring in the building when it was built in 1971. After the plaintiffs presented their case, the defendants moved for directed verdicts.

Fowler Electric Co. ("Fowler") argued successfully that plaintiffs had presented no evidence from which the jury could find negligence on the part of Fowler, and no evidence of proximate cause involving Fowler extending beyond mere conjecture and speculation; that in any event the project had been accepted by the then-owner, and contained no hidden defect or nuisance per se, and no imminently or inherently dangerous work (see *Queen v. Craven*, 95 Ga. App. 178, 183-184 (97 SE2d 523)). IDS Corporation argued that it could not be liable because it had had no notice of any defect or malfunction in or relating to the electrical system, and any defects were so hidden in the walls of the building that IDS did not discover, and could not have discovered them by any inspection (see *Ramsey v. Mercer*, 142 Ga. App. 827 (237 SE2d 450); *Borcuk v. Briarcliff Animal Clinic*, 140 Ga. App. 203 (230 SE2d 353)).

After lengthy testimony and arguments, the trial judge directed a verdict for each defendant. Plaintiff's expert witness had testified that in investigating and analyzing the fire, he found in the wiring three distinct violations of the National Electric Code and the DeKalb County Electrical Code, which violations he described as negligent and which in his opinion caused the fire. Nevertheless, the trial judge decided as a matter of law that no inculpatory evidence higher than speculation had been shown and that in any case the defendant Fowler was not negligent because the work was inspected and apparently approved by the DeKalb County Electrical Inspection Department. *Held:*

1. As to IDS Corporation, we affirm. There was no evidence from which the jury could find that IDS had any notice of defective or malfunctioning electrical wiring. Although it was shown the fire started near or at the air conditioning compressors, evidence that the air conditioners sometimes did not work would not form the basis to infer notice of electrical defects, where it was not shown that any malfunction of the air conditioners had any connection to defective wiring or that such notice, if properly acted upon, would lead to an

awareness of the defective wiring.

2. As to Fowler Electric Co., we reverse. The plaintiff's expert witness, Mr. Berkowitz, is an electrical engineer, licensed master electrician, design engineer, and teacher of electrical technology, specializing in investigating electrical fires. He testified succinctly as follows: "The only [viable theory as to the cause of the fire] was wiring in [the area of the air conditioners].... Inspecting that wire, I found... it was the conduit that ran from the air conditioner to the disconnect switch that didn't have an end, a proper end termination on it. The end termination is called a connector ... [which] is metal. If you cut the even edge very carefully you will still end up with a rough edge and you have to protect the wire from getting cut so your fitting slides over the end and protects the wiring. There was no end fitting on those conduits. [Another] major violation was the presence of what are called taps [or a] splice where you connect two wires together and there are plastic connectors you screw on the end of the wire. The Code requires these always be inside the box. You can't just put them in the wall. There were several of these taps put in the wall there and far enough away from the switchboxes that they simply could not have been inside the switchbox and in addition, I looked through the debris on the ground and [found] no evidence of additional boxes they would have been enclosed in. The reason those taps are required to be inside the box is if for any reason they become loose they become hot and if they become hot, they start a fire and so those are the two things I found wrong with that installation and I feel that because there was no connector on the end of that conduit, that wiring in that area was subjected to the sharp edge and it became abraided and began to have a shortage and shorted it out and this caused a short and a short circuit which produced enough heat to start that fire....

"The fire in my opinion was caused by the improper termination of the conduit...This [metallic] conduit could not have been properly terminated in [a plastic box]. There is just no way that it could be done... The reason the Code requires the taps to be in the box is because if the taps become loose at all, they can become hot and start a fire. Once the short circuit is in the conduit excessive current can cause one of these tap connections to become hot and if they are loose and ... not in a box, then they become the source of ignition for a fire ...It is correct [that there could have been several points of ignition created by faulty wiring]. Article 300-15...requires that...taps must be in a box... Section 370-19 establishes that the boxes must be accessible and ... this means ... the box can't be buried in the wall, it has to be accessible either from the inside or outside with a cover and these were the sections of the Code violated." (Mr. Berkowitz concluded there were no tap switch boxes because metal boxes would

not have burned, and although plastic boxes might burn, usually a portion is left, and he found no such evidence of any boxes in the debris.)

On cross examination, Mr. Berkowitz testified that the absence of the described connector could not be observable during a "rough in" inspection and would probably not be noticed or observable in a final inspection. He was not equivocal in his testimony. He said: "If there is one message the Code brings across, it is protect the wires. Now, all these four hundred pages are trying to say is really, protect the wires. The way to connect the wire is terminate the end of the conduit so it doesn't give, so there is a clear path in the conduit into the box where the connection is made so if you leave the conduit hanging loose, it is improperly terminated and you are not protecting the wire. [When you don't have that connector you can wear away the insulation protecting the wire. And when you do that, you have current going through the wire and you get a heat build-up and don't have any protection for the wire]." Mr. Berkowitz repeated the cross examination that he found no taps and no connectors in the debris of the fire. Of two possibilities as to the source of ignition, he stated that both conditions were caused by the faulty wiring described, and "the conditions were there in both cases to produce the short circuit. *As to which occurred ahead of the other, after the debris, subjected to the resulting fire, this becomes covered up, what there is evidence of. . . There would not be any remaining physical evidence [of] the particular point where the fire started."* (Emphasis supplied.) In short, Mr. Berkowitz did not sway from his assertion that the wiring was in direct violation of the National Electrical Code and DeKalb County Electrical Code, and that these violations were in his studied opinion the cause of the fire.

There can be no debate that this testimony, with the whole of Mr. Berkowitz' testimony, constitutes evidence from which the jury could have found defendant Fowler Electric Co. liable for the plaintiff's damages. It cannot reasonably be said that "the evidence introduced, with all reasonable deductions therefrom" (Code Ann. § 81A-150a) demands a verdict for Fowler Electric Co.; therefore, directed verdict for Fowler was error. *Atlanta Coca-Cola Bottling Co. v. Jones,* 236 Ga. 448, 450-451 (224 SE2d 25).

At trial Fowler argued, as it does on appeal, that Mr. Berkowitz testimony was pure speculation and proved nothing. The trial judge, over objection, permitted defense counsel to inquire of Mr. Berkowitz whether "as the result of your investigation you personally feel *beyond a reasonable doubt* that what you have identified as the cause of this fire is the only possible cause . . . that is reasonably possible." (Emphasis supplied.) Nevertheless, Mr. Berkowitz replied that what

he had testified to as the cause of the fire was, in his opinion, the only possibility. Fowler argues that the plaintiff's evidence that Fowler's negligence caused the fire is so remote that to allow the jury to return a verdict on that evidence would be to sanction speculation and conjecture by the jury. This is not so. There is no debate that Mr. Berkowitz is an expert knowledgeable in the investigation and analysis of fires, in particular, electrical fires. He fully described his investigation and analysis of the fire, basing his conclusions and opinions on principles of electrical engineering and facts he observed and interpreted in the debris of the fire. It was reasonable that he draw conclusions as to the cause of the fire, and he was qualified to do so. See *Parker v. State,* 145 Ga. App. 205, 207 (243 SE2d 580); *Dual S. Enterprises v. Webb,* 138 Ga. App. 810 (227 SE2d 418). As was emphasized in his testimony above, a fire naturally tends to burn out its own tracks and thus there will generally be some speculation by an expert testifying as to the anatomy and cause of a fire; but where his opinion testimony is based on observed facts the testimony is competent evidence, and its weight, insofar as how speculative it may be, is to be determined by the jury. See *Dual S. Enterprises,* supra, p. 814. Similarly, we find no substance in the defendant's argument and the trial court's observation that Mr. Berkowitz' "circumstantial evidence is equally compatible with both theories of liability and non-liability," and hence fails to prove either theory. Mr. Berkowitz did not waver from his expressed conclusion that the negligent and defective installation of the wiring caused the fire.

Fowler argues that plaintiffs as third parties may not recover against Fowler unless it is shown that the wiring was a nuisance per se, inherently or intrinsically dangerous, or imminently dangerous to third persons, citing *Higgins v. Otis Elevator Co.,* 69 Ga. App. 584 (26 SE2d 380) and *Queen v. Craven,* supra. The *Queen* case admonishes that this principle applies where an independent contractor has turned over his work to the owner and the owner has accepted it, *if the defect is not hidden but readily observable on reasonable inspection.* In such event the employer (owner) becomes liable for the defect. See *PPG Indus. v. Genson,* 135 Ga. App. 248, 250-251 (217 SE2d 479); *Queen,* supra, p. 184; and Code Ann. § 105-502. The evidence in this case, however, may render that principle inapropos. The jury could find, from the evidence, that the alleged defective conditions of the wiring were hidden in the walls of the building and not readily observable on reasonable inspection, nor even on "rough-in" inspection or final inspection; hence, the above rule absolving the independent contractor from liability except in certain cases might not be available to Fowler in the first place. Moreover, if it were, the jury might find the wiring to have been a nuisance per se, inherently

or intrinsically dangerous, or imminently dangerous to third persons. See *Kuhr Bros. v. Spahos,* 89 Ga. App. 885 (81 SE2d 491). The plaintiff's expert testified, in effect, that the negligently installed wiring was a time bomb which was bound, inevitably, to eventually result in a fire.

If the court in *Eyster v. Borg-Warner Corp.,* 131 Ga. App. 702 (206 SE2d 668) seemingly reached a different result from what we do here, it is in fact because the use and installation of the particular wire in that case were not deemed to be negligent, a factor yet to be determined by a jury in this case.

Fowler argues and the trial court ruled that because this wiring installation was apparently approved by the DeKalb County Electrical Inspectors Office on both rough and final inspections, Fowler had a right to rely on this approval and the wiring as a matter of law could not be held imminently dangerous to third persons. This is not the case. For one thing, the plaintiff's expert offered his opinion that the defective wiring would not have been observable upon rough or final inspection. More importantly, it is too plain to be debated that if an action is negligent, approval of that negligence by another party or even a government agency, or rather of the conditions creating the negligence, does not as a matter of law excuse the negligence. In *Central of Ga. R. Co. v. Bernstein,* 113 Ga. 175, 179 (4) (38 SE 394), the Supreme Court held that it was not enough that the defendant had complied with the reasonable regulations laid down by the city. "The fact that the defendant had complied with all the regulations prescribed by the city authorities would not relieve it of liability if it had been in fact negligent... While the nature of the city regulations and the defendant's compliance with them may have been of assistance to the jury in solving (the question as to whether the defendant had used ordinary care and diligence), the finding might properly have been that, although the defendant complied fully with all the city regulations, it was still negligent. The defendant owed to the plaintiff the duty of using a certain degree of care ... and that degree of care could not be lessened or changed by any regulations in the permit given by city authorities." If we seemed to rule differently in *PPG Industries,* supra, and *Russell v. Cynwid Invest.,* 142 Ga. App. 410 (236 SE2d 147), it was because under all the circumstances of those cases, including the defendants' adherence to government regulations, the conditions were not shown to have been negligent. While the approval of the work by a third party or inspection agency might be evidence going to the question of negligence, we find no reason to conclude that where it is proved that a defendant is negligent, he should be relieved of liability as a matter of law merely because the defective work was approved by someone

324

else. As Mr. Berkowitz expressed it, "The DeKalb County Commission approved the 1968 [electrical] Code. The fact that [the electrical inspector] decided to approve that particular installation was not in keeping with the DeKalb County Code." If that is so, the inspector's error certainly does not render any less defective or negligent the installation he approved. It was error to direct a verdict in favor of Fowler.

*Judgment reversed in part and affirmed in part. Deen, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 3, 1981 —

*Irwin M. Levine, Pat D. Dixon, Jr., Clayton Sinclair, Jr.,* for appellants.

*James M. Poe, Ben S. Williams, J. Kenneth Moorman, Jeanette Blue,* for appellees.