### 67355. ZIPPY MART, INC. et al. v. FENDER.

McMURRAY, Chief Judge.

This is a workers' compensation case with reference to coronary heart disease in which the claimant underwent coronary bypass surgery for "coronary artery disease." The administrative law judge made findings of fact that from "1979 to July, 1981," claimant was employed as a supervisor having nine stores located in south Georgia (from Homerville to Americus) all of which "required him to work ten to twelve hours per day . . . [and the] pressure and stress of claimant's employment duties precipitated and caused claimant's coronary artery disease to develop which necessitated the coronary bypass [and as a result, on the date of the coronary bypass operation, he] sustained an accidental injury which arose out of and in the course of his employment with this employer." On appeal to the board the findings of the administrative law judge (with one director dissenting) were made the findings of fact and conclusions of law of the board. The superior court affirmed. We granted a discretionary appeal to review in the light of the recent Supreme Court decision in *Southwire Co. v. Cato*, 250 Ga. 895 (302 SE2d 91). *Held*:

In that case (*Southwire*, supra), after discussion of *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864), the Supreme Court again recited that in heart attack cases "it is often difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor." The Supreme Court in *Guye* reversed this court because the employee suffered a heart attack due to exertion and that same was sufficient evidence for the fact finder

(the board) under the presumptive evidence rule found in former Code § 38-102 (now OCGA § 24-1-1), that is, "evidence which consists of inferences drawn by human experience from the connection of cause and effect and from observations of human conduct," and at page 217 held there was "competent, creditable evidence as to causation sufficient to be found to satisfy the preponderance of the evidence requirement" of former Code Ann. § 114-102 (Ga. L. 1982, p. 2485) (now OCGA § 34-9-1). OCGA § 34-9-1 (4) provides that an injury shall not "include heart disease . . . the failure or occlusion of any of the coronary blood vessels . . . unless it is shown by a preponderance of competent and credible evidence that any of such conditions were attributable to the performance of the usual work of employment." In reversing this court, the Supreme Court in *Guye* concluded the board was "authorized to and did determine that the performance of claimant's work activities precipitated or contributed to his heart injury . . ." In *Southwire* the Supreme Court held that since the heart attack occurred while the claimant was at home there was "uncontradicted medical opinion that the employee's work did not cause or contribute to his heart injury," but also held that the ruling in *Guye* "should not be read as an implication that the natural inference from human experience disappears upon ·presentation of medical testimony," then holding "that the 'natural inference' is not available where . . . the symptoms of the heart attack did not occur until the claimant had been home several hours."

The facts in the case sub judice are entirely different from either those of *Guye* or *Southwire*. Hence this case is not controlled by *Southwire Co. v. Cato*, 250 Ga. 895, supra. Both the claimant and his wife had testified to facts obviously establishing extreme stress in that the claimant was working a six-day week, frequently "in excess of ten hours each day," and "his personality changed," he became "short tempered, worried and . . . [a] different person" after his promotion to his supervisory position. Further, this 38-year-old man began to experience pains in his chest and nervousness and after the second hospitalization for evaluation he underwent the artery bypass operation. It is true other expert testimony was sufficient to establish that his atherosclerosis revealed "a degenerative disease" of the coronary arteries, that is, the depositing of material inside the arteries giving rise to the need for bypass surgery. A medical expert did testify that *in his opinion* the claimant's employment did not cause the atherosclerosis. However, he conceded that stress could contribute over a period of time to the development of atherosclerosis. With reference to stress his own doctor stated directly as to causation that stress is "undoubtedly one of the factors contributing to coronary artery disease," although other risk factors are "common denominators and are more objectively assessed . . . [and in his opinion] these risk factors

are primarily responsible for his coronary disease," and further that it is very difficult to quantitate whether his coronary disease was due to the occupational stress or the other risk factors therein mentioned. This expert further testified that "working conditions could have been a precipitating cause of his developing the condition which necessitated coronary bypass surgery and disability." Accordingly, the board's award of compensation was supported by evidence. The superior court did not err in affirming that award.

Neither law nor medicine are exact sciences, and we have not reached that degree of certainty where a medical expert can state a definite and certain diagnosis that the claimant's heart disease did not arise out of and in the course of his employment. This case is similar to that of *City Council of Augusta v. Williams*, 137 Ga. App. 177, 178 (223 SE2d 227). In the case sub judice, both physicians have expressed opinions that other risk factors were primarily responsible for the claimant's heart disease, but they did testify that stress is one of the factors contributing to coronary heart disease, and certainly the laymen's testimony by the claimant and his wife establishes that this claimant was under extreme stress by reason of his promotion to a supervisory position from 1979 to July 1981. The fact finder under OCGA § 24-1-1 (6) (formerly Code § 38-102) was authorized to consider the presumptive evidence consisting of inferences drawn by human experience from the connection of cause and effect and from observations of human conduct as derived from all of the evidence, that is, the lay testimony, as well as the expert opinion testimony and find in this case that the claimant's heart disease, as of the date of the bypass, resulted in an accidental injury within the definition of the law "which arose out of and in the course of his employment." The fact finder (the board) is not required to accept the experts' more definite opinions as overriding their other opinions that stress "could" or "would" have caused the claimant's heart disease. The weight and credibility of the experts' testimony along with that of the lay testimony as to stress was for the fact finder, and the fact finder weighed this testimony and accepted same to the exclusion of an expert's opinion that claimant's employment did not cause the atherosclerosis. There was direct evidence of the required causal connection between the stress and the resulting heart disease requiring surgery. This is not a heart attack case, and it is not a case of location (location being simply a matter of whether the injury manifested itself on or off the job). Rather, the present case is one of preventive surgery. It is possibly the first instance of bypass surgery in workers' compensation to be dealt with at length by this court. In effect, what we have here is a living autopsy. Instead of waiting for the patient to die and then determining the cause of death, medical doctors operated, found a cause of sure death, and arrested it. The record discloses direct evidence of

a stressful job. The record also discloses opinion evidence by a doctor that stress could have been a precipitating factor in the deterioration of claimant's heart. Given these facts, even though other medical evidence is contradictory, the present case falls within the "any evidence" rule, and the "natural inference" discussed in *Southwire Co. v. Cato*, 250 Ga. 895, supra, is not reached or relied upon. Any other approach would put this court in the untenable position of weighing evidence in the guise of semantic criticism of medical opinion in each heart-related workers' compensation case. Accordingly, we must affirm the judgment.

*Judgment affirmed. Deen, P. J., Banke, Carley, and Pope, JJ., concur. Quillian, P. J., Shulman, P. J., Birdsong, and Sognier, JJ., dissent.*

DECIDED MARCH 12, 1984 —
REHEARING DENIED APRIL 2, 1984 —

*Michael D. Usry, John T. Woodall, Marvin W. McGahee*, for appellants.
*Jack J. Helms, Thomas C. Chambers III*, for appellee.

BIRDSONG, Judge, dissenting.

This is another in the long line of difficult cases concerning the compensability under the Workers' Compensation Act ("Act") of injuries resulting from heart disease. The Workers' Compensation Board ("Board") found the claimant's injury, a quintuple coronary artery bypass, to be compensable, and this decision was affirmed by the superior court on appeal. This majority has affirmed that judgment by applying the "any evidence" rule and by distinguishing *Southwire Co. v. Cato*, 250 Ga. 895 (302 SE2d 91). In my view, the award must be reversed, and I respectfully dissent from the majority's affirmance.

Because I disagree with the majority's analysis of this case in view of its facts and existing precedent, a more detailed review of the evidence relevant to this appeal is in order. The claimant began his latest period of employment with Zippy Mart in 1974. From approximately 1979 to July, 1981, he was employed as a supervisor. In this capacity he had supervisory duties over several Zippy Mart stores in south Georgia. He traveled to the various stores two to four times a week trouble-shooting for general problems, preparing the stores for inspection, bookkeeping, hiring personnel, and filling in for absentee employees where necessary. Both the claimant and his wife testified that he usually worked a six-day week and frequently worked in excess of ten hours each day. His wife testified that "his personality

changed, he become [sic] short-tempered, worried, and just altogether [a] different person" after he was promoted to his supervisory position.

Sometime prior to December, 1980, the claimant began to experience "pains in my chest and nervousness." He was hospitalized in December, 1980, for evaluation of his condition. On August 7, 1981, during a subsequent hospitalization, he underwent a quintuple coronary artery bypass. *He continued to work until his hospitalization for the operation.* He was 38 years old at the time of the operation.

The claimant's medical history contained in the record reveals a 20-year smoking history, obesity, hypertension, an extremely high triglyceride level, a high cholesterol level, and angina pectoris. *The bypass surgery revealed no evidence of previous myocardial infarction, nor is there any other evidence in the record of previous heart attack or failure.* Atherosclerosis, which the undisputed medical testimony revealed is a degenerative disease of the coronary arteries involving the depositing of material inside the arteries, was the medical condition giving rise to the need for the claimant's bypass surgery.

Evidence was taken from two physicians regarding the alleged connection between the claimant's employment and his heart disease and subsequent bypass operation. Appellants' medical expert testified that he was of the opinion that the claimant's employment did not cause his atherosclerosis, although he conceded that stress could contribute over a period of time to the development of atherosclerosis. By letter, the claimant's surgeon submitted the following statement on the issue of causation: "Stress is undoubtedly one of the factors contributing to coronary artery disease. Coronary artery disease is ubiquitous and other risk factors such as smoking, high cholesterol, hypertension, family history, etc. are common denominators and are more objectively assessed. Since the identifiable risk factors can be quantitated to a considerable extent and since [the claimant's] triglycerides were markedly elevated in excess of 3,000 (this is the highest level I have ever seen) and because he was a smoker and hypertensive, I feel that these risk factors are primarily responsible for his coronary disease. This is not to minimize the effect of occupational stress to which [the claimant] was subjected but I am merely stating that it is very difficult to quantitate. *Specifically in answer to your question I can state that [the claimant's] working conditions could have been a precipitating cause of his developing the condition which necessitated coronary bypass surgery and disability.* This statement however should be viewed in context with the discussion above." (Emphasis supplied.) There is no additional direct or opinion evidence on the causation issue.

The Board, adopting the award of the administrative law judge, concluded that the "pressure and stress of claimant's employment du-

ties precipitated and caused claimant's coronary artery disease to develop which necessitated the coronary bypass. Accordingly, claimant, *on August 7, 1981 [the date of the bypass operation]*, sustained an accidental injury which arose out of and in the course of his employment with his employer." (Emphasis supplied.) The final award of the Board, in a 2-1 decision, was rendered prior to the Supreme Court's opinion in *Southwire Co. v. Cato*, supra. Appellant's primary contention on appeal is that the Board, in reaching its conclusion as to causation, necessarily relied upon the "natural inference" that *Southwire Co.* has found to be unavailable in cases in which "the symptoms of the heart attack did not occur until the claimant had been home several hours." Id. p. 898. The claimant contends that *Southwire Co.* is inapposite for two reasons: (1) the Board relied upon medical evidence and not upon the "natural inference through human experience"; (2) there was evidence in this case of symptoms of heart disease that occurred on the job. In the latter respect, the claimant testified that he had a dizzy spell with sharp pains in his chest while having lunch with his supervisor on an unspecified date.

(1) In my opinion, the majority has improperly analyzed this case in several key respects. First, it is critical to note that the "accidental injury" found by the Board occurred on August 7, 1981, when the claimant underwent coronary bypass surgery. There is no evidence in the record that the claimant sustained an on-the-job heart attack or heart failure. Thus, the Board correctly concluded that the disabling event invoking the Act was the bypass surgery and not the heart disease leading to the surgery. This seems to be ignored by the majority. The alleged compensable event in this case was the surgery and alleged resulting disability, which makes the surgery the equivalent of a heart attack. The heart "injury" in this case occurred off the job, and under *Southwire Co.*, supra, the "natural inference" was not available to assist the Board in establishing causation.

This conclusion is not changed by the fact that the claimant may have suffered from symptoms of heart disease while working. The Supreme Court held in *Southwire Co.*, supra, p. 898: "[T]he 'natural inference' is not available where . . . the symptoms of the heart attack did not occur until the claimant had been home several hours." As I interpret this holding, the Supreme Court laid down the rule that unless there is evidence that a heart attack, heart failure, or other heart-related "injury" (OCGA § 34-9-1 (4)) occurred on the job, or at least in close proximity in time to the claimant's employment, the "natural inference" is not available to the Board on the issue of causation. This rule is not changed by the mere fact that the claimant suffers from symptoms of heart disease, such as angina, while at work. It should be noted in this respect that the claimant in *Southwire Co.* informed his wife that he was not feeling well shortly after he arrived

home after work and five hours prior to his heart attack. I believe the Supreme Court used the phrase "symptoms of the heart attack" to permit a claimant to argue the "natural inference" whenever there is symptomatic evidence of an on-the-job heart failure even though there may be a conflict in the evidence as to the precise time the heart failure actually occurs, or whenever the process of heart failure begins at work but is not completed until after the claimant has left work. See, e.g., *Carter v. Kansas City Fire &c. Ins. Co.*, 138 Ga. App. 601 (226 SE2d 755). Thus, if the Board concludes in a given case, based upon symptoms occurring on the job, that the heart attack process began while the employee was at work, the Board properly may use the "natural inference" arising from the particular circumstances of that case.

It is undisputed by the parties and the Board that the disabling, "accidental" injury in this case was the claimant's coronary bypass surgery occurring while he was away from work. There is no evidence that the symptoms experienced while at lunch with his supervisor were symptoms of heart failure or any other "accidental injury." *Southwire Co.* clearly limits the use of the "natural inference" to those situations in which an employee sustains symptoms of a heart attack or heart failure, whether induced by heart disease or otherwise, while working for his employer. The facts of this case support the application of the "natural inference" even less than the facts in *Southwire*. Therefore, I must reject the majority's conclusion that *Southwire Co.* is inapplicable to this case. The "natural inference" should not be available to the Board in this case.

(2) I must also reject the majority's conclusion that the "natural inference" was not utilized by the Board in this case. The Board, which adopted the opinion of the administrative law judge, did not recite the medical testimony in its order. Rather, the Board outlined appellant's job duties and concluded that the "pressure and stress of claimant's employment duties precipitated and caused claimant's coronary artery disease to develop which necessitated the coronary bypass." As noted in *Southwire Co.*, supra, p. 897, the "natural inference" rule means that " 'the evidence must show the work engaged in by the employee to have been sufficiently strenuous or of such a nature that, combined with the other facts of the case, it raises a natural inference through human experience that the exertion [or stress] contributed toward the precipitation of the attack. . . .' " *Hoffman v. Nat. Surety Corp.*, 91 Ga. App. 414 (85 SE2d 784). Without citing any supportive medical testimony, the Board evidently relied upon the "natural inference" when it merely recited claimant's employment duties and then concluded that his bypass surgery was necessitated by heart disease which was caused by his employment. As the tenor of the award indicates that the Board relied on an erroneous legal the-

ory, the award should not stand. *Beachamp v. Aetna Cas. &c. Co.,* 112 Ga. App. 417, 418 (145 SE2d 605).

It appears that the majority's conclusion that the "natural inference" is "not reached or relied upon" in this case arises from a misunderstanding of the nature and purpose of the "natural inference." The "natural inference" rule merely allows the fact finder in heart injury cases to infer causation from the circumstances surrounding the injury and the claimant's employment. As will be discussed below, without the ability to draw that inference, the evidence relating to the circumstances of employment and the nature of the injury has no probative value to the fact finder on the issue of causation. The majority concludes that the "record discloses direct evidence of a stressful job." This evidence, which is circumstantial as to the issue of causation, obviously has no bearing whatever on causation unless the Board is allowed to infer, through human experience, a causal connection between the job stress and the heart injury. Thus, the majority's own analysis of this case provides an excellent example of the "natural inference" at work.

(3) By improperly sanctioning the use of the "natural inference," the majority opinion masks the crucial issue presented by this case, which is whether the award is supported by any competent evidence. OCGA § 34-9-1 (4) provides that " '[i]njury' and 'personal injury' [shall not] . . . include heart disease, heart attack, the failure or occlusion of any of the coronary blood vessels, or thrombosis *unless it is shown by a preponderance of competent and credible evidence that any of such conditions were attributable to the performance of the usual work of employment.*" (Emphasis supplied.) Thus, the employee has the burden of producing some "competent and credible evidence" from which the Board can conclude by a preponderance of the evidence that the heart disease and resulting "injury" is causally related to the employment. The only evidence in this case, aside from the "natural inference from human experience" derived from the circumstances surrounding the claimant's employment, which purportedly supports a finding of the required causal connection is the above-quoted medical testimony. Thus, in light of the fact that *Southwire Co.* has removed the "natural inference" from this case, we are faced with the question of whether a physician's testimony, *standing alone,* that the claimant's "working conditions could have been a precipitating cause of his developing the [heart] condition" constitutes "competent and credible evidence" on the causation issue. If this testimony alone is insufficient to support an award, then the Board's award of compensability should be reversed due to the lack of any supportive evidence.

In *City Council of Augusta v. Williams,* 137 Ga. App. 177, 178 (223 SE2d 227), this court stated: "The physician's testimony that

claimant's work-connected emotional stress might or could have contributed to his injury is sufficient to support the board's finding that claimant's injury arose out of and in the course of employment. *Sears, Roebuck & Co. v. Poole,* 112 Ga. App. 527 [, 529 (145 SE2d 615)]; *Burson v. Howell,* 112 Ga. App. 675 [, 677] (145 SE2d 718); *J. D. Jewell, Inc. v. Peck,* 116 Ga. App. 405 (157 SE2d 806)." See also *Union Carbide Corp. v. Coffman,* 158 Ga. App. 360, 361 (280 SE2d 140); *American Motorist Ins. Co. v. Corbett,* 144 Ga. App. 845 (1) (242 SE2d 748). Appellee contends on the basis of the above statement that the record in this case contains sufficient evidence to support an award. Unrecognized by both the majority and appellee is the fact that *City Council of Augusta, Sears, Roebuck & Co., Burson,* and *J. D. Jewell,* unlike the present case, all involved heart attacks that occurred *while the employee was at work* and all involved either specific exertion or, in the case of *City Council of Augusta,* considerable job-related stress which precipitated a heart attack while at work. See also *Carter,* supra; *Cox v. Employers Mut. Liab. Ins. Co.,* 122 Ga. App. 659 (178 SE2d 287). Therefore, the holdings of these cases are not based on the proposition that medical opinion testimony to the effect that the employment could possibly have contributed to the employee's heart disease is *alone* sufficient to support an award of compensation as the "natural inference" was clearly available. To the contrary, the correct evidentiary rule as to causation in such cases was clearly stated by this court in *McDaniel v. Employers Mut. Liability Ins. Co.,* 104 Ga. App. 340, 343-344 (121 SE2d 801): "Inasmuch as [in this type of case] there is not such a 'natural inference through human experience' raised to indicate that the exertion [or job-related stress] contributed to the [heart] injury, *therefore it becomes solely a medical question* which in this case could be answered only by competent medical testimony based at least on *reasonable probability. . . . Cases in which evidence in addition to 'could' or 'probably could,' etc., [opinion] testimony, authorizes an award of compensation are distinguishable by the fact of the additional testimony.*" (Emphasis supplied.) See also *Georgia Cas. &c. Co. v. Jernigan,* 166 Ga. App. 872 (5) (305 SE2d 611); *Maczko v. Employers Mut. Liability Ins. Co.,* 116 Ga. App. 247, 250 (157 SE2d 44); *Hardwick v. Price,* 114 Ga. App. 817 (1) (152 SE2d 905). As was stated in *Nat. Dairy Products Corp. v. Durham,* 115 Ga. App. 420, 422-423 (154 SE2d 752), "[t]he cases requiring affirmative medical evidence of *probability,* such as *Ladson Motor Co. v. Croft,* 212 Ga. 275 (92 SE2d 103); *Savannah River Lumber Co. v. Bush,* 37 Ga. App. 539 (140 SE 899); *Atkinson v. Fairforest Co.,* 90 Ga. App. 425 (83 SE2d 243); *Atlanta Transit Co. v. Knight,* 92 Ga. App. 469 (88 SE2d 738); *Callaway Mills Co. v. Hurley,* 100 Ga. App. 781 (112 SE2d 320) and cit., are distinguishable in that they involved issues of causation which, by

the nature of the situation, could be resolved solely by expert medical evidence standing alone, in which cases the evidence must naturally be based at least on *reasonable probability*. 'It appears to be well settled that medical testimony as to the *possibility* of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, *standing alone*, to establish such relation.' [Cit.]"

The testimony at issue in this case must be distinguished from testimony in which an expert gives a definite opinion that may or may not be viewed by the fact finder as being based on pure speculation. In the latter situation, the weight and credibility of the testimony is for the fact finder. *Johnson v. Fowler Elec. Co.*, 157 Ga. App. 319 (2) (277 SE2d 312). However, in the present case, as in *McDaniel*, supra, and related cases, and unlike *City Council of Augusta*, the "opinion" offered was nothing more than a statement that the required causal connection *could exist*, was not an opinion that the connection in reasonable probability did exist, and was unsupported by circumstantial evidence from which the Board was permitted to infer causation.

In workers' compensation heart injury cases, "the fact finder may rely on different forms of evidence, including medical opinion, or 'the natural inference through human experience.'" *Guye v. Home Indem. Co.*, 241 Ga. 213, 216 (244 SE2d 864). However, in every case, a claimant must demonstrate "by a preponderance of competent and credible evidence" (OCGA § 34-9-1 (4)) that his heart injury is related to his employment. In the present case, the record is devoid of any direct evidence of the required causal connection. Under *Southwire Co.*, supra, the Board was not entitled to review the circumstances surrounding the claimant's employment and derive any "natural and reasonable inference" of causation from that evidence. Finally, the physician's testimony that the causal connection merely "could have" been present fails to achieve the statutory standard requiring proof "by a preponderance of competent and credible evidence" (OCGA § 34-9-1 (4)), and fails to show "a sufficiently strong 'possibility'" of the required causal connection to overcome the rule against speculative testimony. Compare *Travelers Ins. Co. v. Hogue*, 130 Ga. App. 844, 845 (204 SE2d 760). Consequently, contrary to the conclusion of the majority, the record in this case is devoid of competent and credible evidence that would support the finding of causation between appellee's employment and his bypass surgery.

The majority may criticize the position expressed in this dissent as placing an undue emphasis, through the use of "semantics," on the causation issue in workers' compensation cases where the heart injury does not occur on the job. However, in my opinion, no other result is possible in light of *Southwire Co.* Once any "natural and reasonable inference" is destroyed because the "accidental injury" occurred off

the job, the factual testimony regarding the circumstances of the claimant's employment is irrelevant to the fact finder on the issue of causation, except to the extent that it may provide a basis for expert opinion. Absent other relevant direct evidence, the only potentially probative causation evidence in this case is the opinion testimony of the medical experts. *McDaniel*, supra. This case, then, becomes one of those "which, by the nature of the situation, [can] be resolved [only] by expert medical evidence standing alone . . ." (*Nat. Dairy*, supra, p. 422), and such opinion evidence must rise to the level of reasonable probability and not mere possibility.

It is important to note that the hearing process before the Board, while informal, must be "consistent with the requirements of due process of law. Irrelevant, immaterial, and unduly repetitious evidence shall be excluded. The rules of evidence pertaining to the trial of civil nonjury cases in the superior courts of Georgia shall be followed. . . ." OCGA § 34-9-102 (e) (1). Thus, while the "distinction between proximate and remote causes is not to be too rigorously pressed in the application of the [workers'] compensation act" (*U. S. Cas. Co. v. Smith*, 162 Ga. 130, 137 (133 SE 851)), it is clearly inconsistent with legislative mandate, not to mention fundamental principles of due process, for this court to allow an award of compensation to stand on purely speculative and conjectural testimony that alone proves nothing. Compare, e.g., *Liberty Mut. Ins. Co. v. Harden*, 85 Ga. App. 830 (2) (70 SE2d 89) (award of compensation reversed) with *Federated Mut. Hardware Ins. Co. v. Elliott*, 88 Ga. App. 266 (3) (76 SE2d 568) (award of compensation affirmed).

Because the Board's award of compensation is not supported by any evidence in the record in this case, I must respectfully dissent from the majority opinion. I am authorized to state that Presiding Judge Quillian, Presiding Judge Shulman, and Judge Sognier join in this dissent.

QUILLIAN, Presiding Judge, concurring specially to dissent.

The purpose of this special concurrence is to draw attention to the fact that *Southwire Co. v. Cato*, 250 Ga. 895 (302 SE2d 91) needs clarification. The holding in *Southwire* has been interpreted to mean that the "heart attack" must occur while the employee is actually on the job to be compensable. In my opinion this was not what was held or intended to be held by the Supreme Court in *Southwire*. This erroneous interpretation may have occurred because the ruling made in *Southwire* did not fit the second question which the court stated certiorari was granted to answer. The second question stated: "whether the 'natural inference from human experience' is applicable to a heart attack occurring at a time when the employee is not engaged in the employer's business." *Southwire Co. v. Cato*, 250 Ga. 895, supra.

The court only held that the "natural inference" would not apply when the heart attack did not occur until several hours after the claimant had left the job.

In my opinion, the court did not intend to rule that if there was sufficient evidence that the claimant had experienced symptoms of the attack during his employment and that the duties of his employment were sufficiently strenuous either because of mental strain or physical exertion to cause the heart attack; that the "natural presumption" would not apply because the employee was not actually on the job site.

In my judgment, this was not the intent of the court's ruling because it would be unreasonable under certain circumstances — an example of these circumstances would be where the facts showed that the employee had a previous heart condition; that he was engaged in very strenuous activities during the entire day of his employment; that he was working in the extreme heat; that he manifested symptoms of the oncoming heart attack several times during the day; that he was highly overweight and a heavy smoker; that he punched out on the time clock and got in his truck and left his employer's premises; that after he had driven approximately one-half mile he sustained a heart attack and immediately died.

I believe that the Supreme Court in its wisdom would rule that the "natural inference" applied under the circumstances stated above.

However, if that was or was not the intent of the court it would be great service to the Court of Appeals and the trial courts as well as the State Board of Workers' Compensation and the Bar for it to clarify the issue as to where the "natural inference" rule applies.