A93A1788. A & P TRANSPORTATION et al. v. WARREN.
(443 SE2d 857)

BEASLEY, Presiding Judge.

Warren's claim for workers' compensation benefits based on a disabling heart attack was granted by the ALJ, and the board affirmed. Employer A & P Transportation and its insurer applied for a discretionary appeal from the superior court's judgment affirming the board. We granted that application.

As found by the ALJ, claimant, who was 51 years old at the time of the events in question in October 1991, had been employed as a long-haul truck driver for approximately 20 to 25 years. For the last five years, he drove 18-wheel trucks for A & P Transportation. He would make trips primarily from Calhoun, Georgia, to Los Angeles, California. His normal schedule was that he would pick up a tractor and trailer on Friday afternoon or evening and drive to California, taking breaks of an hour or two every five to six hours. The trips would take 40 to 48 hours. After arriving in California, he would sleep two or three hours and then repeat the trip, usually with a return haul, to various cities in Florida, Georgia, and North Carolina.

Generally, he would get back to Calhoun on Thursday night or Friday morning and then leave again on Friday afternoon. Although there was some evidence of logbook violations in 1989 and 1990, any

failure of Warren to keep accurate logbooks, which he was criticized for, or any violations in those years did not cause his 1991 heart attack. In addition, according to Warren, his schedule necessitated violation of ICC regulation. The employer knew his schedule, was charged with knowing the ICC regulations, and may reasonably be inferred to know the distance traveled. It could calculate the time involved in these assignments. Warren also testified that the employer did not require him to stop these violations.

He would normally eat greasy and "junk" food at truck stops. He testified that there is no such thing as low-calorie and low-fat food around truck stops. He was 5'8" and weighed 212 pounds. He also smoked about two or three packs of cigarettes each day for 40 years, sometimes at home but mostly at work to relieve tension and boredom. He was already on medication for high blood pressure and a hiatal hernia when he began employment with A & P Transportation. He testified that driving was physically demanding and mentally stressful. Family history included the fact that his mother had had a heart attack.

On this particular trip, he was returning to North Carolina. On Tuesday his chest began hurting when he got to Gordon, Texas, and he thought it was his hernia. His brother-in-law was with him and asked if he wanted to go to the doctor. He said no and kept taking the hernia medication. He called A & P dispatcher Jones from Texas and Alabama and advised of persistent pains in his chest and stomach. He arrived in Rome, Georgia, where he resides, at approximately 9:00 p.m. on Thursday. At Jones' instruction he took the rig to Calhoun and turned it over to another driver to complete the delivery to North Carolina. He then returned to Rome and went to bed.

The next day, he was seen by his family physician who erroneously diagnosed the pain as attributable to the hernia and prescribed medication accordingly. Claimant returned home, slept for a short period, arose at noon, and collapsed. He was taken to the hospital emergency room and admitted with a massive heart attack, resulting in his total disability.

Dr. Young, claimant's cardiologist, testified that the risk factors for heart disease and heart attack include high-fat/high-cholesterol diet, cigarette smoking, and lack of exercise. Dr. Young also testified that when he initially saw claimant in 1982, he would have explained to him the significance of his risk-factor profile and would have warned him against continuing to smoke. Dr. Young's opinion was that if claimant smoked, ate the wrong foods, and got no exercise due to his job, the job would have contributed to his heart attack.

The ALJ found that the medical evidence reveals that Warren was "virtually destined" to have a heart attack because of certain factors, i.e., cigarette smoking, lack of exercise, and an unhealthy diet of

high-cholesterol food, which put him at great risk. He further found that the preponderance of evidence was that the existence of two of these factors was at least in part attributable to the lifestyle he led as a long-haul truck driver, which made it difficult for him to exercise on any regular basis or to obtain healthy, low-cholesterol food. He concluded that claimant established the necessary causal nexus between his employment and heart attack to render the claim compensable. The board adopted the ALJ's award, by a vote of two to one, concluding that the employee's proof comported with OCGA § 34-9-1 (4).

The superior court affirmed the award under the "any evidence" rule, to which we are also bound. Regardless of what our findings would be if we were the factfinders, " '[u]pon appeal, the evidence will be construed in a light most favorable to the party prevailing before the board, and every reasonable factual inference and presumption of validity of award should be indulged in by the reviewing court. (Cits.) Neither the superior court nor this court has any authority to substitute itself as a fact-finding body in lieu of the board; an appellate body is bound by the "any evidence" standard of review, and is not authorized to substitute its judgment as to weight and credibility of witnesses. (Cits.)' [Cit.]" *Impress Communications v. Stanley*, 202 Ga. App. 226, 229 (1) (414 SE2d 238) (1991). See also *Ero Indus. v. Phillips*, 207 Ga. App. 432, 433 (1) (428 SE2d 396) (1993).

We also review this case in the context of the Workers' Compensation Act. Its purpose is "to protect a worker against unexpected personal injuries arising out of, and in the course of, his employment. [Cits.] . . . The claimant has the burden of demonstrating that his claim falls within the Act's coverage. [Cits.] He must prove that the injury for which he seeks workers' compensation benefits arose out of, and in the course of, his employment; an injury that occurred in the course of his employment but did not also arise out of the employment does not come within the Act. [Cit.]" *Universal &c. Ins. Co. v. Ga. Auto. &c. Fund*, 182 Ga. App. 595, 596-597 (1) (356 SE2d 686) (1987).

"An accident 'arises out of' employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which can not fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the

work. It must be incidental to the character of the business, and not independent of the relation of master and servant. [Cit.]" *Davis v. Houston Gen. Ins. Co.*, 141 Ga. App. 385, 386 (233 SE2d 479) (1977).

"[OCGA § 34-9-1 (4)] . . . provides that 'injury' and 'personal injury' under the [Workers'] Compensation Act shall not include 'heart disease, heart attack . . .,' unless it is shown by preponderance of competent and creditable evidence that it was attributable to the performance of the usual work of employment.'" *Guye v. Home Indem. Co.*, 241 Ga. 213, 214 (244 SE2d 864) (1978); see *Southwire Co. v. Eason*, 181 Ga. App. 708, 709 (353 SE2d 567) (1987). Where the ALJ and board find that the performance of claimant's work activities precipitated or contributed to his heart injury, the award will not be set aside on appeal if there is *any evidence* to support the finding. The question of what evidence preponderates rests with the factfinders. *Guye*, supra at 218. See *Zippy Mart v. Fender*, 170 Ga. App. 617 (317 SE2d 575) (1984).

The rule is that where a previously diseased condition of a claimant for compensation is aggravated by an injury or accident arising out of and in the course of the employment, and this results in disability, there is a compensable injury. *Griggs v. Lumbermen's Mut. Cas. Co.*, 61 Ga. App. 448, 450 (6 SE2d 180) (1939). Consequently, in *Guye*, supra, where the employee suffered a heart attack while performing strenuous manual labor which his job required, it was held that the heart injury was compensable even though the employee was a smoker with heart disease and there was no medical evidence as to causation. The natural inference from human experience was enough to satisfy the preponderance of evidence statutory requirement. Similarly in *Southwire Co.*, supra, the employee's heart attack was held compensable, where her work was physically and emotionally stressful and there was medical evidence that this could have been a precipitating factor in the heart attack, even though the employee was obese, smoked, and had a family history of heart disease. In *Zippy Mart*, supra, bypass surgery for coronary heart disease was held to constitute a compensable injury, where there was medical evidence that occupational stress suffered by the employee after being promoted to a supervisory job position could have been the precipitating cause of his developing the condition which necessitated the surgery. As stated in *Ga. Elec. Co. v. Rycroft*, 259 Ga. 155, 159 (378 SE2d 111) (1989), "there is a presumption that an employer takes an employee as he finds him . . .," that is, with his existing health conditions.

In this case, a heart attack has been adjudged compensable by the administrative agency because of a causal nexus between the claimant's employment and risk factors relating to nutrition and exercise. These factors fall into the realm of personal habits arrived at by personal choice and are not normally occupational hazards. Cultivat-

ing a routine of lack of exercise, poor nutrition, smoking, and being overweight constitutes a hazard to which people are exposed apart from employment. However, the nature of the employment may, as in this case of long-haul truck driving, require long periods of stress without physical exercise, and without the availability of a healthy diet, all exacerbated by time constraints. "It is well recognized in 'heart attack' cases that it is often difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor. [Cit.]" *Guye*, supra at 215.

Applying the test set out in *Davis*, supra, there is evidence that these were "conditions" of the work, and they were causally connected to the heart attack which had its onset when claimant was driving and which fully matured after he got the truck to someone who could complete the delivery on time.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur. Pope, C. J., concurs and also concurs specially. Blackburn, J., concurs specially. McMurray, P. J., Andrews, Johnson and Smith, JJ., dissent.*

POPE, Chief Judge, concurring specially.

While I fully concur with the majority's decision, I write separately to emphasize why the superior court's order must be affirmed in this case. The dissenters in this case seek to substitute themselves as the factfinders in this workers' compensation case in lieu of the board. In so doing the dissenters ignore the "any evidence" standard of review by which this court is bound in workers' compensation cases. " ' "[T]his court is [not] authorized to reverse an award because in its opinion the prevailing party did not carry the burden of proving a fact necessary to sustain its position[,] if such fact is nevertheless supported by some competent evidence." (Cit.)' [Cit.]" *Ero Indus. v. Phillips*, 207 Ga. App. 432, 434 (428 SE2d 396) (1993).

In this case the claimant's doctor testified that if the claimant smoked, ate the wrong foods and got no exercise due to his job, the job would have contributed to his heart attack. Based on the claimant's testimony, the ALJ found that he had shown by a preponderance of the evidence that his job as a long-distance truck driver made it difficult for him to exercise or maintain a healthy diet. This was sufficient evidence for the ALJ and later the board to conclude that claimant had established the necessary causal nexus between his employment and heart attack to render the claim compensable. Regardless of whether members of this court would have reached the same conclusion if sitting as the finder of fact or whether we sanction certain of the claimant's "lifestyle choices," our standard of review in

workers' compensation cases requires us to affirm the superior court in this case.

BLACKBURN, Judge, concurring specially.

I disagree that there exists any causal connection, for workers' compensation purposes, between Warren's heart injury and his lifestyle by which he increased his risk of developing heart disease. However, the record contains evidence that supports a finding that the conditions of his employment contributed to or aggravated his heart injury, thus rendering the heart injury compensable in this case.

"It is well recognized in 'heart attack' cases that it is often difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor. [Cit.]" *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978).

In the instant case, Warren testified that he continued driving the truck after he developed chest pain, because he wanted to deliver his load. Further, at one point he called the company dispatcher and informed him of his chest pain, and was instructed to keep driving the truck until he reached a certain destination where another driver would complete the job. The record contains medical evidence that Warren's heart attack actually commenced several days prior to his collapse, when he first developed the chest pain, and that if Warren had received medical treatment then, the severity of the heart attack and damage to his heart could have been lessened. This evidence authorized a finding that Warren's employment contributed to his heart injury.

In workers' compensation cases, this court is not authorized to disturb the Board's award where there is any evidence to support it. Inasmuch as there is evidence to support the award in this case, we must affirm the superior court's affirmance of the Board's award.

SMITH, Judge, dissenting.

I respectfully dissent. OCGA § 34-9-1 (4) provides that "injury" or "personal injury" within the meaning of the Workers' Compensation Act shall not include heart disease or heart attack "unless it is shown by a preponderance of competent and credible evidence that any of such conditions were attributable to the performance of the usual work of employment." There is no contention that Warren's heart attack was brought on by exertion required by his employment, and the claim that his employment required a lifestyle which predisposed him to heart attack is unsupported by the evidence. I would find that there was no evidence to support the finding of the Board and that the evidence in the record, particularly the testimony of

Warren's cardiologist, demands a reversal.

The majority correctly states that Warren's cardiologist initially saw Warren in 1982 with a suspected heart attack. The cardiologist additionally noted: "[a]t that time we had long discussions about risk factors and he has totally ignored them for the last nine years. . . . He has been totally noncompliant with regard to risk factors and even seeking help during his acute illness." In his deposition, the cardiologist expressly declined to make a connection between Warren's work and his heart attack: "that's something that a medical doctor can't really comment on as an expert witness because *that's a subjective choice by an individual.* A person who smokes cigarettes and eats high cholesterol food and doesn't exercise has a higher risk of heart disease, unquestionably." (Emphasis supplied.) "I can certainly establish the link between cigarette smoking and heart disease. But as the smoking relates to his job — or not his job — or working at home or working on the road, I can't make that association." He testified that Warren had all but one of the known "risk factors" for heart attack, including family history of heart disease, obesity, hypertension, and smoking. He testified that these risk factors were well known: "they're on television every night."[1] Finally, he agreed that Warren, with all his risk factors, would have had a heart attack whether he worked at all or not.

There is no evidence of a causal connection between Warren's employment and his heart disease. While Warren contends that he was "forced" by his employment to smoke, eat unhealthy foods, and take no exercise, the record does not support this contention. There is no showing that smoking, diet, or lack of exercise formed part of the usual duties of Warren's employment, or that his employer controlled his personal habits. Warren testified that he had smoked two to three packs of cigarettes a day for forty years, approximately fifteen years before he became an over-the-road truck driver and thirty-five years before he began working for this employer. There was no evidence that Warren's employer controlled his diet; he could have eaten at the salad bars which have appeared recently in many chain restaurants,[2] or he could have carried healthful low-cholesterol food and drink from home in the refrigerator installed in his truck. Sedentary employment for long hours does not inevitably foreclose opportunities to exercise,[3] and the record indicates that Warren did not exercise even

---

[1] The recognition by the medical profession of adverse consequences from improper diet and lack of exercise is not of recent origin. See Benjamin Rush, *Sermons to Gentlemen Upon Temperance and Exercise* (1772).

[2] An observant traveler on the interstate highways will have noted that many roadside restaurants now provide both salad bars and truck parking.

[3] Exercise manuals for the sedentary and desk-bound have proliferated in recent years. See, e.g., Time-Life Books, *Quick Workouts: Fitness Anytime, Anywhere* (1987).

when he was at home.

Finally, the Interstate Commerce Commission has enacted comprehensive regulations intended to prevent excessive fatigue and stress in motor carrier drivers by limiting the number of hours they may drive, and requiring that drivers keep an elaborate logbook showing their hours of service. 49 CFR 395.1 et seq. It is apparent from the record that Warren's employer reprimanded him repeatedly for logbook violations, including failure to total his hours and driving in excess of the maximum number of hours permitted. Like Warren's decision to smoke up to three packs of cigarettes a day, eat excessive amounts of fatty foods, and take no exercise, this was a personal choice, and it was in fact counter to the express instructions of his employer. In short, there was no evidence that Warren's personal habits and resulting heart attack were "attributable to the performance of the usual work of employment" within the meaning of OCGA § 34-9-1 (4).

Contrary to the assertion in Judge Blackburn's special concurrence, the transcript does not support a finding that Warren's employment contributed to his injury. When Warren began feeling ill, he believed that it was a hernia. His brother-in-law was running with him at the time, and urged him to go to the hospital, but he refused. When he called his dispatcher from Alabama his first report was that a water pump had started leaking on his truck. He also told the dispatcher that "my chest and stomach was hurting." Asked why he reported the pain to the dispatcher, he responded, "Well, it really didn't serve no purpose, except for me to tell him and let him know that I was hurting. Because I was still thinking it was a hernia hurting. And I was intending to try and go ahead and deliver my load of freight that I had."

The dispatcher attempted to arrange another truck to take Warren's load *in Alabama*, but that truck did not show up. Only then did the dispatcher direct Warren to Calhoun, Georgia. Warren went home and went to sleep. The next morning he went to his doctor, who misdiagnosed his condition as "the hernia acting up again." He filled his doctor's prescription, which he felt "eased me a little bit," went home and went back to bed, got up several hours later and then collapsed.

There is no evidence that Warren's heart attack was "attributable to the performance of the usual work of employment" within the meaning of OCGA § 34-9-1 (4). The dispatcher made two attempts to accommodate Warren's request for another driver, which was based at least in part on Warren's report of a leaky water pump. Warren ignored his brother-in-law's appeals to seek medical assistance and continued to drive. Short of requiring a dispatcher to make a medical diagnosis over the telephone which Warren's own doctor was apparently unable to make in person, we cannot construe the employer's

attempts to accommodate Warren as instructions to him to continue "working through" a heart attack. Warren's injury was not attributable to his usual work, but to his being "totally noncompliant with regard to risk factors and even seeking help during his acute illness," as his cardiologist observed. Therefore, I believe that the record does not support a finding that Warren's employment contributed to his heart attack.

For these reasons, I would reverse the award of the Board. I am authorized to state that Presiding Judge McMurray, Judge Andrews and Judge Johnson join in this dissent.

DECIDED APRIL 1, 1994 —
RECONSIDERATION DENIED APRIL 27, 1994 — 

Irwin, Bladen, Baker & Russell, B. A. Bladen, Ed Russell, for appellants.

Mundy & Gammage, E. Lamar Gammage, Jr., for appellee.