A91A0831. AMERICAN INTERNATIONAL ADJUSTING COMPANY et al. v. DAVIS.
(414 SE2d 292)

COOPER, Judge.

In August 1988, appellee was examined by Dr. Don Robinson, a pulmonary disease specialist, after experiencing chest pains and difficulty in breathing. Appellee was exposed to kaolin dust in the course of his employment and stopped working on September 3, 1988. After a series of tests, Dr. Robinson advised appellee, on September 9, 1988, that in his opinion, appellee contracted work-related pneumoconiosis and was totally disabled. Appellee then informed his employer that he would be out of work. The personnel clerk with responsibility for administering group health benefit plans provided appellee with the paperwork necessary for coverage, which appellee completed and returned on October 14, 1988, along with a statement from Dr. Robinson reporting his diagnosis. Shortly thereafter, appellee began receiving group disability benefits. The employer referred appellee to Dr. William Rawlings for a second opinion, and after examining appellee on October 14, 1988, Dr. Rawlings confirmed the kaolin pneumoconiosis diagnosis but concluded that appellee was not totally disabled and could work at tasks free from kaolin exposure. On October 17, 1988, Dr. Rawlings advised the employer's nurse that appellee be given tasks with mild or moderate activity free from exposure to kaolin dust. On October 27, 1988, appellee retained legal counsel for assistance in making a claim for workers' compensation benefits. Beginning on November 3, 1988 until January 9, 1989, appellee saw Dr. Ram Puri, who agreed that appellee was totally disabled, but Dr. Puri also concluded that appellee could work in another area away from kaolin dust. The employer filed its first report of injury and notice to controvert payment of compensation with the board on December 2, 1988, and the following day, counsel for appellee notified the em-

ployer of his representation of appellee and requested medical records. On October 4, 1989, appellee filed a claim for workers' compensation benefits with the board. An attorney fee contract submitted to the ALJ revealed that appellee had new counsel who began working for appellee on October 2, 1989.

Appellants, the employer and its insurer, moved for a dismissal of appellee's claim on the ground that the claim was time-barred. After conducting a hearing, the ALJ granted the motion, and appellee appealed to the full board. The full board adopted the ALJ's findings of fact and conclusions of law, and the case was appealed to the superior court where it was reversed. We granted appellants' application for discretionary appeal to determine whether the trial court erred in reversing the board's dismissal of appellee's claim for benefits.

1. In their first five enumerations of error, appellants contend the superior court committed legal error and acted in excess of its authority in reversing the ruling of the board that appellee's claim was time-barred by OCGA § 34-9-281 (b) (2) and in determining that OCGA § 34-9-82 (a) was the applicable statute of limitation.

(a) In its order, the superior court ignored the determination of the board that OCGA § 34-9-281 (b) (2) was the applicable statute of limitation and declared that OCGA § 34-9-82 (a) controlled. However, implicit in the board's adoption of the former statute as the applicable statute of limitation was its determination that appellee's pneumoconiosis satisfied the statutory definition of an occupational disease which is "[a disease] which arise[s] out of and in the course of the particular trade, occupation, process, or employment in which the employee is exposed to such disease, provided the [following is proven]: (A) A direct causal connection between the conditions under which the work is performed and the disease; (B) That the disease followed as a natural incident of exposure by reason of the employment; (C) That the disease is not of a character to which the employee may have had substantial exposure outside of the employment; (D) That the disease is not an ordinary disease of life to which the general public is exposed; (E) That the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence." OCGA § 34-9-280 (2). A review of the record shows that there was ample evidence to support the determination that appellee's pneumoconiosis was an occupational disease; therefore, the specific statute of limitation applicable to occupational diseases as set forth in OCGA § 34-9-281 (b) (2) should control, instead of the statute generally applicable to compensable injuries found in OCGA § 34-9-82 (a). " '(T)he findings (of the board) are conclusive and binding (OCGA § 34-9-105 (c)) and neither the superior court nor this court has any authority to substitute itself as a fact finding body in lieu of the Board.' [Cits.] The superior court,

when sitting as an appellate body, is bound by the 'any evidence' standard of review and is not authorized to substitute its judgment as to weight and credibility of the witnesses. [Cit.]" *Maddox v. Elbert County Chamber of Commerce*, 191 Ga. App. 478 (1) (b, c) (382 SE2d 150) (1989). By adopting OCGA § 34-9-82 (a) and ignoring the Board's determination, the superior court became a factfinding body, substituting its own judgment of the evidence for the judgment of the Board.

OCGA § 34-9-281 (b) (2) provides, in pertinent part, "an employer shall be liable for compensation under this article only where . . . [t]he claim for disablement is filed within one year after the date the *employee* knew or, in the exercise of reasonable diligence, should have known of the disablement and its relationship to the employment. . . ." (Emphasis supplied.) The record establishes, by appellee's own testimony, that on September 9, 1988, Dr. Robinson informed him that he had contracted pneumoconiosis due to exposure to kaolin dust at work. Therefore, appellee's claim should have been filed within one year of September 9, 1988, and his filing on October 4, 1989 was beyond the statutory period. Appellee is incorrect in his contention that he should not be charged with knowledge of his disability until Dr. Rawlings provided the second opinion because this opinion, rendered at the behest of the employer, provided notice of his disability to the *employer*. The focus of the statute is on the *employee's* knowledge. Moreover, Dr. Rawlings' opinion served to confirm Dr. Robinson's initial diagnosis. Hence, under the "any evidence" rule, the Board was correct in dismissing the claim as time-barred.

(b) However, even if OCGA § 34-9-82 (a) were applicable, the result would be the same. That statute provides, "[t]he right to compensation shall be barred unless a claim therefor is filed within one year after injury, except that if payment of weekly benefits has been made or remedial treatment has been furnished by the employer on account of the injury the claim may be filed within one year after the date of the last remedial treatment furnished by the employer or within two years after the date of the last payment of weekly benefits." Notwithstanding specific findings of the Board to the contrary, the superior court found that benefits in accordance with the statute had been paid; that Drs. Robinson, Rawlings and Puri provided remedial treatment; that Dr. Puri's remedial treatment occurred as late as December 6, 1988; and that appellee's claim was timely filed. In contrast, the Board found that such treatments were diagnostic, not remedial; that the employer's group medical insurance carrier paid for the medical services rendered by Drs. Robinson and Puri; and that such payments made under the employer's group medical insurance coverage were not workers' compensation payments which tolled the

statute of limitation. *Leavell v. Life Ins. Co. of Ga.*, 165 Ga. App. 770, 773 (302 SE2d 623) (1983). We agree with the board. Furthermore, the payments did not represent "weekly benefits . . . on account of the injury" as they were not made "in lieu of compensation." *Harper v. L & M Granite Co.*, 197 Ga. App. 157 (2) (a) (397 SE2d 739) (1990). In addition, the board's determination that the treatments provided by the physicians were diagnostic is fully supported by the evidence. See generally *Owens-Illinois, Inc. v. Childers*, 160 Ga. App. 566, 568 (288 SE2d 11) (1981). "The superior court was required to construe the evidence in the light most favorable to the employer as the party who prevailed before the Full Board. [Cits.]" *Department of Public Safety v. Boatright*, 188 Ga. App. 612 (1) (373 SE2d 770) (1988). OCGA § 34-9-200 (a) provides in pertinent part, that "[t]he employer shall furnish the employee entitled to benefits under this chapter such medical . . . care . . . which *in the judgment of the State Board of Workers' Compensation* shall be reasonably required and appear likely to effect a cure, give relief, or restore the employee to suitable employment." (Emphasis supplied.) The superior court again erred in substituting its judgment for the fully supported findings of the board. *Boatright*, supra at 615.

The superior court's reliance on *Georgia Institute of Technology v. Gore*, 167 Ga. App. 359 (306 SE2d 338) (1983) for the proposition that Dr. Puri's treatment was remedial is misplaced. In *Gore*, this court held that when an employer fails to post a panel of physicians in violation of OCGA § 34-9-201 (b), medical treatment rendered on account of an employment-related injury is deemed remedial, for statute of limitation purposes. However, there is no factual or legal parallel between *Gore* and the instant case. Appellee has not alleged that the employer failed to post a panel of physicians, and there is no evidence in the record of such a violation by the employer, nor a finding of a violation of any other Board Rule. The Board found that no remedial treatment had been rendered which would toll the statute of limitation and that the nature of appellee's visits to the physicians was diagnostic. The superior court cited no evidence to the contrary. There also was no finding either by the ALJ, the board or the superior court that the employer wrongfully controverted appellee's right to compensation. Moreover, in its order, the superior court stated that the employer "cut off" appellee's medical benefits while the record demonstrates and the board specifically found that all medical bills for services provided by Dr. Puri were paid by the employer's group carrier.

(c) Appellee contends that appellants are estopped from asserting the statute of limitation as a defense because the notice to controvert was not timely filed (OCGA § 34-9-221 (d)). However, according to *Raines & Milam v. Milam*, 161 Ga. App. 860, 862 (289 SE2d 785)

(1982), failure to timely file a notice to controvert does not estop the employer from defending against a claim.

In further support of his argument that appellants are estopped from asserting the statute of limitation as a defense, appellee alleges that the employer's personnel clerk, in October 1988, deliberately filed his claim as a group claim when it was apparent that he had sustained a compensable work-related injury and the clerk fraudulently assured him he was being taken care of, thereby inducing him not to file a claim within the one-year period. The board specifically found that assurances of payment under the group plan and appellee's completion of the paperwork for those benefits did not induce appellee to refrain from filing for workers' compensation; that appellee retained legal counsel to pursue a workers' compensation claim as early as October 27, 1988; that counsel requested appellee's medical records from the employer on December 2, 1988; that the statute of limitation commenced on September 9, 1988; that there was no plausible reason for appellee's counsel's failure to file a claim on appellee's behalf until after the statute had run; and that appellants were not estopped from asserting the defense. We agree. "Under these facts, there is no basis for a conclusion that the employer induced the claimant to allow the statute to run by leading [him] to believe that benefits would be paid voluntarily." *Owens-Illinois*, supra at 568.

Based on the foregoing, we conclude that the superior court erred in reversing the board's dismissal of appellee's workers' compensation claim.

2. In their sixth and seventh enumerations of error, appellants contend the superior court acted in excess of its authority in finding appellants responsible for payment of treatment rendered by Dr. Puri in the absence of the requisite findings of fact by the board pursuant to OCGA § 34-9-200 (a) and as to the actual amount of such charges. Inasmuch as we have determined that appellee's claim was barred by the statute of limitation, we need not consider these enumerations.

*Judgment reversed. Birdsong, P. J., and Pope, J., concur.*

DECIDED DECEMBER 3, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 —

*Jones, Cork & Miller, Rufus D. Sams III, James M. Elliott, Jr.,* for appellants.
*Carter & Butt, Eugene D. Butt,* for appellee.