A06A1039. PUTZEL ELECTRIC CONTRACTORS et al. v. JONES.
(639 SE2d 540)

BERNES, Judge.

Putzel Electric Contractors and its insurer CNA Risk Management appeal from an award of workers' compensation in favor of appellee Allen Ray Jones. The award of the administrative law judge ("ALJ") was affirmed by the Appellate Division of the State Board of Workers' Compensation (the "Board") and the Superior Court of Bibb County. Appellants contend that the court below erroneously affirmed the Board's finding that Jones' claim is not barred by the applicable statute of limitation and that Jones had sufficiently proved that he had suffered injurious exposure to asbestos in the course of his employment with Putzel. For the reasons discussed below, we affirm.

On appeal, we construe the evidence in the light most favorable to Jones as the party that prevailed before the Board, and "every presumption in favor of the Board's award is indulged." (Citation omitted.) *Footstar v. Stevens,* 275 Ga. App. 329 (620 SE2d 588) (2005).

"If any evidence supports the [Board's] findings, those findings are binding and conclusive, and we may not substitute ourselves as a fact finding body in lieu of the Board." (Punctuation and footnote omitted.) *Dallas v. Flying J*, 279 Ga. App. 786, 787 (632 SE2d 389) (2006).

So viewed, the record shows that Jones presently suffers from asbestosis and was rendered totally and permanently disabled in 2001. At the time of the proceedings below, he was 71 years old and had worked as an electrician nearly all of his life until he became disabled. Jones smoked a pack of cigarettes a day for nearly 40 years until 1994. Working as an electrician, he was exposed to asbestos frequently throughout the 1970s and 1980s.

Jones was employed by Putzel from December 1988 until July 1995. His last exposure to asbestos occurred when he was working for Putzel in late 1992 or early 1993, while he was renovating an old building in Macon that was being converted into a United States Bankruptcy Court. During the renovation, Jones was a job foreman and performed electrical work, the majority of which was in the basement of the building. Jones could readily see dust and other particles being released into the air as he tore out insulation and other material in the ceiling. Nonetheless, he did not wear any breathing protection throughout the course of the job.

After he had been working in the basement for approximately a month, Jones discovered what he recognized to be asbestos in the ceiling ducts. He immediately reported his discovery to Putzel's safety director, who instructed that all work in the basement cease until it had been abated. Jones testified that the same safety director had discussed with the employees the dangers of asbestos and had given out fliers from the Occupational Safety and Health Administration on the subject. Once Jones was permitted reentry into the basement, all of the material that he had identified as asbestos had been removed from the ductwork and pipes.

At the workers' compensation hearing, Jones called as a witness a co-worker who independently verified the asbestos exposure, Jones' discovery of the asbestos, and its subsequent abatement. The contractor who was hired to abate the basement also testified that the material that he removed was identifiable as asbestos by sight without the necessity of testing.

Because Jones' right to compensation hinges upon when he first learned and/or was first diagnosed with asbestosis, OCGA § 34-9-281 (b) (2), the ALJ was presented with an expansive and detailed account of Jones' medical history at the hearing. Jones had been battling with breathing and lung complications for years prior to being rendered disabled. His medical problems began in June 1992, when he went to the doctor complaining of fatigue and congestion in his lungs. At that

time, he was admitted into the hospital for two weeks and diagnosed with a "[r]ight sided pleural effusion, probably parapneumonic" of "unknown etiology."

In 1993, his primary doctor, Dr. Fehlenberg, opined that Jones probably suffered from "aspiration pneumonia." Jones began seeing a pulmonologist, Dr. Robinson, in 1994, who noted in his medical records that Jones had suffered from pleural effusions in 1992 but that "[n]o etiology could be found." He also noted that Jones had been exposed to asbestos throughout his career and questioned whether his condition may be related to his asbestos exposure. On June 27, 1994, Dr. Robinson wrote a letter to Dr. Fehlenberg that he was "most suspicious" that Jones' problems were related to asbestos exposure, but Dr. Robinson was unable to provide a formal diagnosis because his testing of the lungs failed to disclose any asbestos bodies.

Dr. Fehlenberg noted on July 19, 1994 that Jones suffered from "recurrent left pleural fluid, etiology undetermined except possibly result of asbestos exposure in [the] past." Dr. Fehlenberg referred Jones to Dr. Plummer, whose report after Jones' first visit listed several possibilities that could account for Jones' lung problems, one of which was that "the pleural effusions are related to the asbestos exposure." In his notes of August 26, 1994, Dr. Plummer wrote that, "[m]ost likely this is asbestos disease. However, it is possible he could have had a pneumonitis in 1992 and again a pleuritis in 1994, which would explain the pleural scarring seen." On August 31, 1994, Dr. Plummer wrote Dr. Fehlenberg a letter in which he speculated that Jones' problems could be "a residual parenchymal scar from previous pneumonia" or "an underlying malignancy . . . in view of his tobacco abuse." The letter made no mention of asbestos.

In October 1994, Jones was again admitted into the hospital for shortness of breath, fatigue, and a fever. In his report upon admission, Dr. Fehlenberg noted that "one of Dr. Robinson's previous opinions was that the pleural effusion and chronic problems that [Jones] has had may be related to asbestosis." However, he also stated that it was "[o]f interest" that Jones' mother also had a pleural effusion in 1993, "etiology unknown." Dr. Robinson also consulted with Jones while he was admitted, and his report reflected in the history section that both he and Dr. Plummer thought that Jones' symptoms were "most likely" related to asbestos. Dr. Fehlenberg's discharge summary, however, made no mention of asbestosis.

According to Jones, he was not told nor did he believe that he had asbestosis in 1994. Rather, his understanding was that no one could determine exactly why he was having pneumonia, but that he saw a specialist in diseases who "came up with the idea that [he] was aspirating reflux" and the other doctors "went along with it." His

records confirm that he did undergo a "Nissen laparoscopic fondoplication" for treatment of reflux in December 1994 while under the care of Dr. Plummer.

In April 1996, Jones was admitted to the hospital for pneumonia and chronic obstructive pulmonary disease. The admitting physician noted that Jones' "past medical history is pertinent for having bilateral pleural effusions in the past, unknown etiology."

Jones underwent a CT scan of his thorax on June 22, 2001 and the related report stated that the etiology of the lung changes was "uncertain." Dr. Plummer wrote a letter on July 30, 2001 "to whom it may concern" stating that Jones had been "totally disabled from work" beginning on May 1, 2001 due to pneumonia.

Also in July 2001, Jones began treatment with a new primary physician, Dr. Bomberger. Her diagnosis as of December 2001 was "chronic lung disease with asbestos exposure and aspiration pneumonitis." The same report expressly stated that Dr. Robinson had done a lung biopsy "to look for asbestos which was negative." Dr. Bomberger wrote a referral letter on August 7, 2002 in which she stated that Jones needed "further evaluation of chronic cough of unknown etiology" and needed to be evaluated for "chronic aspiration of gastric contents, which may be accounting for his recurrent pulmonary infections."

In December 2002, Jones was admitted into the emergency room for breathing problems and Dr. Bomberger listed on his admission report that his lung condition was "[i]diopathic," or of unknown origin.

Finally, Jones began seeing pulmonologist Dr. Hendricks on January 9, 2003. In his initial report, Dr. Hendricks noted that Jones had relayed that he had a history of pleural effusions, but had been given no reason for their reoccurrences. Like the doctors before him, Dr. Hendricks stated in a letter to Dr. Bomberger that he suspected that underlying Jones' ailments was his exposure to asbestos.

After running a series of tests on Jones, including CT scans, pulmonary function tests and x-rays, Dr. Hendricks informed Jones on February 13, 2003 that he believed that Jones had asbestosis. According to Jones, this was the first time that he was ever told that he had asbestosis. Dr. Hendricks' notes of that date indicate that his findings "seem to be consistent with asbestosis" and that he "encouraged [Jones] to discuss with his union regarding benefits for his asbestos related lung disease." Dr. Hendricks' notes of May 13, 2003 state definitively for the first time that Jones had "[a]sbestosis with obvious pleural thickening and calcification." The doctor also wrote a letter on August 14, 2003 "to whom it may concern," stating that Jones was under his care for "pulmonary fibrosis and asbestosis [and] is totally and permanently disabled from any occupation."

Jones filed a workers' compensation claim against Putzel on September 23, 2003, alleging that he had developed an occupational disease secondary to asbestos exposure in the course of his employment with Putzel. The ALJ found that Jones had been diagnosed with asbestosis on August 14, 2003 by Dr. Hendricks and that he had suffered injurious exposure to asbestos during his employment with Putzel.

The ALJ's award was reviewed by the Board, which held that the ALJ erred when it found that Jones was diagnosed with asbestosis in August 2003, holding instead that he was actually diagnosed with asbestosis by Dr. Hendricks in May 2003, per the doctor's notes. Nonetheless, it found this to be harmless error, because Jones had still filed a claim within the one-year statute of limitation. It otherwise affirmed the ALJ's holdings. The Superior Court of Bibb County affirmed the ruling of the Board.

1. In its first enumeration of error, the appellants contend that the superior court erroneously found that Jones' claim is not barred by the statute of limitation pursuant to OCGA § 34-9-281. That statute provides that an employer shall be liable for compensation upon the disablement of an employee resulting from an occupational disease where:

> The claim for disablement is filed within one year after the date the employee knew or, in the exercise of reasonable diligence, should have known of the disablement and its relationship to the employment; but in no event shall the claim for disablement be filed in excess of seven years after the last injurious exposure to the hazard of such disease in such employment; provided, however, that an employee with asbestosis or mesothelioma related to exposure to asbestos shall have one year from the date of first disablement after diagnosis of such disease to file a claim for disablement.

OCGA § 34-9-281 (b) (2).

Appellants argue that the first clause of OCGA § 34-9-281 (b) (2) mandates independently of the third clause that the statute began to run as soon as Jones knew or should have known of the relationship between his ailments and his exposure to asbestos. They assert that the ALJ and reviewing court erred to the extent that they relied upon the third clause of the statute and determined that the statute of limitation began to run from the date that Jones received a definitive diagnosis of asbestosis.

Pursuant to this argument, appellants contend that Jones was found to be disabled as of May 1, 2001 and that he believed in 1993

that he had been exposed to asbestos while renovating the bankruptcy court building, that he knew of the dangers of asbestos exposure and of his legal rights pertaining to the same in 1993, and that he was first diagnosed as having an asbestos-related disease in 1994. They base their arguments with respect to Jones' knowledge on the various doctors' notes referring to and suspecting asbestos as the underlying cause of Jones' lung problems as early as 1994. Accordingly, the appellants argue that Jones had no more than one year from the date of disablement, May 1, 2001, in order to file a timely workers' compensation claim pursuant to OCGA § 34-9-281 (b) (2), since he knew or should have known of the relationship between his disablement and his employment on that date.

Alternatively, appellants argue that even if the statute did not begin to run until Jones received a definitive diagnosis of asbestosis, he received the necessary diagnosis in 1994 when the various treating doctors opined that he had a lung disease due to his extensive exposure to asbestos. In this regard, appellants' argue that Jones' date of disablement was actually in October 1994, when he was hospitalized for recurrent breathing problems, and that his claim is barred since he did not file a claim within one year of that date.

The superior court reviewed the order of the Board and, in so doing, recognized the parties' arguments with respect to the construction of OCGA § 34-9-281 (b) (2). Nonetheless, it held that irrespective of whether the third clause of that statute is applied independently of the first clause, Jones still filed a timely claim. The court reasoned that, under OCGA § 34-9-281 (b) (2), the relevant focus is the date on which the employee has knowledge of the connection between his illness and his exposure to asbestos. *American Intl. Adjusting Co. v. Davis*, 202 Ga. App. 276, 278 (1) (a) (414 SE2d 292) (1991). In this regard, the superior court also acknowledged the various physicians' records in 1994 that suggested a possible link between Jones' ailments and his asbestos exposure, but held that the first definitive diagnosis of asbestosis did not appear in Jones' health records until 2003, "despite a myriad of other differential diagnoses."

Moreover, Jones testified at the hearing that he was never informed of asbestosis suspicions until 2003, and Putzel provided no testimony to rebut this assertion. The court concluded that "[a] latent possibility is insufficient to put [Jones] on notice that his condition was a direct result of past asbestos exposure — particularly in light of the fact that he was a smoker and had a familial history of lung disorders." The court therefore upheld the award.

The factual findings of the ALJ are supported by the evidence and we agree with the superior court that it is not outcome determinative under the facts of this case whether the statute of limitation began to run at the time that Jones first learned of the causal connection

between his exposure to asbestos and his resulting disease, or whether it began to run when he was first diagnosed with asbestosis. Both occurred in 2003, rendering his claim, filed in September 2003, timely. We therefore affirm the judgment of the superior court.

2. Appellants next claim that the evidence presented at the hearing was insufficient to prove that Jones had suffered injurious exposure to asbestos during the course of his employment with Putzel. We disagree.

Georgia law entitles an employee who is disabled from an occupational disease to compensation from his employer if

[t]he disease arose out of and in the course of the employment in which the employee was engaged under such employer, was contracted while the employee was so engaged, and has resulted from a hazard characteristic of the employment in excess of the hazards of such disease attending employment in general.

OCGA § 34-9-281 (b) (1). An occupational disease is defined as a

disease[ ] which arise[s] out of and in the course of the particular trade, occupation, process, or employment in which the employee is exposed to such disease, provided [the following is proven]: (A) [a] direct causal connection between the conditions under which the work is performed and the disease; (B) [t]hat the disease followed as a natural incident of exposure by reason of the employment; (C) [t]hat the disease is not of a character to which the employee may have had substantial exposure outside of the employment; (D) [t]hat the disease is not an ordinary disease of life to which the general public is exposed; (E) [t]hat the disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

OCGA § 34-9-280 (2).

The ALJ expressly found as a matter of fact that Jones was exposed to asbestos during his employment with Putzel, that the material that Jones had identified and that had been abated in the bankruptcy court building was in fact asbestos, that the asbestos had been rendered airborne due to the renovation, and that the asbestos had been inhaled by Jones. She also found that Jones is now disabled and his disability is the result of exposure to asbestos at work, and that a causal connection between the two was shown by a preponderance of the evidence. Finally, she found that the last time that

546

Jones had been exposed to asbestos was while he was employed with Putzel. A review of the record shows that there is some evidence to support the ALJ's findings. See *Odum v. Celotex Corp.*, 764 F2d 1486, 1488 (11th Cir. 1985) (applying Georgia law). Cf. *John Crane, Inc. v. Jones*, 278 Ga. 747, 751-752 (604 SE2d 822) (2004); *Fulmore v. CSX Transp.*, 252 Ga. App. 884, 886-887 (1) (557 SE2d 64) (2001). Compare *Maczko v. Employers Mut. Liability Ins. Co.*, 116 Ga. App. 247, 251 (157 SE2d 44) (1967). Accordingly, we affirm the superior court's affirmance of the award in favor of Jones.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 22, 2006.

*Murphy & Sibley, R. Napier Murphy, William R. Shelton, Jr.*, for appellants.

*Jacobs, Slawsky & Barnett, Henry S. Barnett*, for appellee.